570 P.2d 181

**The STATE of Arizona, Appellee,**

v.

**Troy David FEARS, Appellant.**

**Nos. 3764 and 3765.**

Supreme Court of Arizona,
In Banc.

Sept. 21, 1977.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and R. Wayne Ford, Asst. Attys. Gen., Phoenix, for appellee.

Plotkin & Calvin by Dain K. Calvin, Phoenix, for appellant.

CAMERON, Chief Justice.

Defendant was charged in Maricopa County Superior Court No. CR–93295 with the crimes of burglary, A.R.S. §§ 13–301 and 302; assault with a deadly weapon, A.R.S. § 13–249, and rape (first degree), A.R.S. §§ 13–611 and 614, as amended; all allegedly committed on 28 May 1976. In Maricopa County Superior Court No. CR–93376, defendant was charged with burglary, A.R.S. §§ 13–301 and 302; two counts of assault with a deadly weapon, A.R.S. § 13–249; and rape (first degree), A.R.S. §§ 13–611 and 614, as amended; all occurring on 4 June 1976. The matters were consolidated for trial and defendant was convicted by a jury and adjudged guilty of all crimes charged. In Maricopa County Superior Court No. CR–93295, the defendant received a sentence of not less than ten nor more than fifteen years on the burglary charge; not less than thirty years nor more than life on the assault with a deadly weapon charge; and not less than thirty years nor more than life on the rape charge, all three sentences to run concurrently. In Maricopa County Superior Court No. CR–93376, the defendant received not less than sixty years nor more than life on the rape charge; not less than sixty years nor more than life on one assault with a deadly weapon charge and not less than thirty years nor more than life on the other assault with a deadly weapon charge; not less than ten years nor more than fifteen years on the

burglary charge. All of the sentences in No. 93376 were to run concurrently with each other, but to run consecutively to the sentences imposed in No. 93295. From the judgments of guilt and the sentences imposed thereon defendant appeals.

Defendant raises the following questions on appeal:

1. Whether certain statements obtained from the defendant were voluntary;
2. Whether statements made by the defendant on 4 June 1976 were irrelevant and prejudicial;
3. Whether some of the defendant's statements made on 10 June 1976 were inadmissible hearsay;
4. Whether the admission into evidence of individual copies of photographic and fingerprint evidence for each member of the jury panel was prejudicial error;
5. Whether the trial court erred in denying the defendant's request for a continuance of the sentencing date;
6. Whether there was error in the reading of the forms of verdict to the jury; and
7. Whether the sentences imposed were excessive.

The facts necessary for a determination of this matter on appeal are as follows. In the early morning hours of 28 May 1976, a man entered the apartment of a young divorcee in Gilbert, Arizona. The victim resided in the apartment with her twin children, age 2. The victim was awakened and saw a man standing with a knife in his hand who stated, "Be quiet and don't scream or somebody will get hurt." After disrobing himself and the victim, the victim was forced to commit fellatio on the man; he performed cunnilingus on her; and he had sexual intercourse with her. The man then repeated the three acts a second time. The victim stated she submitted to the attacks due to fear created by the use of the knife and fear for the safety of her children. Although the intruder ordered the victim to not tell the police and threatened her with death if she did so, the victim sought help as soon as the defendant left and the police were notified. One week later, on 4 June, at approximately 4 a.m., the same offenses were repeated against the same victim. This time the intruder found the victim's younger brother sleeping on the couch in the living room and forced him into the bathroom and later into the closet before he committed the offenses against the victim.

Later on 4 June, the Gilbert police arrested the defendant. After the defendant was taken into custody, the police discovered a folding knife, later identified by the victim as the knife used by the rapist, and a blue and white handkerchief which the defendant allegedly wore during the rape of 4 June and which the defendant tried to surreptitiously dispose of after his arrest.

A lineup was held. The victim did not select the defendant but chose another individual. Later the victim identified the defendant from a photograph of the lineup and identified the defendant in court. The victim's brother identified the defendant at the lineup as well as in court. A latent print left on the doorknob of the bedroom door in the victim's apartment on 28 May matched the thumbprint of the defendant. Trial to a jury resulted in convictions on all counts and defendant appeals.

## VOLUNTARINESS OF DEFENDANT'S STATEMENTS

At the time of his arrest on 4 June 1976, the defendant was advised of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The arresting officer testified that before taping the interview the defendant waived his rights:

"A The first question asked of Mr. Fears was: 'David, I asked you before the tape went on, if you waived your right to remain silent. Do you still waive that right?
'Response: Yeah. I will talk.
'Question: Okay. And do you waive your right to have an attorney present while you are talking?
'Response: Yeah'."

On the 10th of June, when defendant was taken from the Maricopa County Jail to the County Hospital to obtain hair, blood, and saliva samples, he was advised by the officer that per request of the public defender, defendant was not to discuss the case with the officer.

█ At the request of the State, a voluntariness hearing was held concerning statements made by the defendant on 4 June and 10 June. We have no difficulty in holding that defendant's statements of 4 June, as discussed above, were voluntary. Defendant, however, contends that the statement of 10 June was involuntary in that defendant was not given his *Miranda* warnings before he made the statement. The following testimony was given by the officer at the voluntariness hearing:

"Q  Calling your attention to June 10th, 1976, did you have occasion to transport Troy David Fears from the County Jail to the County Hospital?

"A  Yes.

"Q  Did you make a Departmental Report in regards to that?

"A  Yes.

> *    *    *    *    *    *

"Q  Could you relate now to the Court what transpired on June 10th, 1976, between you and Mr. Fears?

"A  Yes. When I first placed Mr. Fears in the car to transport him to the County Hospital, I advised him that per Jim Logan, the Public Defender, that I was not to discuss the case with Mr. Fears.

I advised him—stated I would not ask or discuss the case. At which time, Mr. Fears started asking me questions.

I again told him I didn't want to talk about the case at all. He was quiet until we got to the hospital, at which time he started making statements again.

I again told him I didn't want to discuss the case, that I had been advised not to. He still continued to make statements. And at that time, I started to write those statements down.

"Q  After arriving at the hospital, he did make some statements to you? Did you make some notes?

"A  Yes. He made several statements.

"Q  Could you relate to the Court what the statements are?

"A  He stated: 'I was guilty of the first rape.' Which at that time he was indicating the rape in November 1975, which through MCSD jurisdiction, which was dismissed.

He also stated: 'If I beat this in Court, do I get my stuff back, like my knife?'

The first statement he made, 'You may win this in Court, but I will win the appeal, because you have to bring all the witnesses back.' Another statement he made was, 'Don't give me any lip or I won't give you the samples. Because contempt of Court—when you are talking about 20 years of my life—isn't that a big deal.'

He also made the statement, 'You don't have your little tape recorder on. You try to use this in Court and I'll deny I ever said it.'

"Q  In regards to the conversation on June 10th, you already testified you said several times—Did you probe him in any way to get him to talk to you?

"A  No.

"Q  Only at his insistence, the conversation came about?

"A  Yes."

And:

"MR. VAUGHN:  *  *  *  when he started to talk—Did you then advise him of his rights?

"THE WITNESS:  No. I advised him: Did he remember that he had the right to remain silent—but not read the rights per the card again.

> *    *    *    *    *    *

"BY MR. VAUGHN:

"Q  This is the June 10th conversation?

"A Yes.

"Q Do you recall when you advised him of that?

"A Before I started writing the statements down, after the third time that he was warned not to talk.

"Q What location?

"A This was at the County Hospital.

"Q Did he indicate about his knowledge of his right to remain silent?

"A He didn't indicate one way or the other. He just continued to talk."

█ We find that the officer in this case "scrupulously honored" the defendant's rights. (See *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 321 [1975]). He did not interrogate the defendant. Instead, he told the defendant that he would not discuss the case with him, repeatedly cautioned the defendant against continuing his comments about the case, and even reminded the defendant of his right to remain silent. We find no elements of coercion in the circumstances in which the defendant made his statements. The officer's efforts were directed toward discouraging, not encouraging the statements. Under no stretch of the imagination can the defendant's statements be considered anything but voluntary; indeed; they were volunteered:

"Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda v. Arizona, supra*, 384 U.S. at 478, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.

We find no error in the court's admission of the defendant's statements of 10 June. See also *United States v. Hopkins*, 486 F.2d 360 (9th Cir. 1973).

## RELEVANCY OF THE STATEMENTS MADE ON 4 JUNE

█ The defendant first contends that statements made by him on 4 June were not relevant and their admission prejudicial.

As reported by the officer, the conversation consisted primarily of the officer telling the defendant what a good case the State had against the defendant and the responses of the defendant were mostly exculpatory setting up an alibi and generally denying the allegations.

The defendant objected to only two portions of his testimony and those objections were sustained by the court. The defendant made no objection to the admission of the rest of the testimony. Having failed to object at trial where the trial judge could have ruled and thereby prevented any error from occurring, the defendant waived a claim of error on appeal. *State v. Wilson*, 113 Ariz. 308, 553 P.2d 235 (1976); *State v. Owens*, 112 Ariz. 223, 540 P.2d 695 (1975). We find no error.

## MATERIALITY OF THE STATEMENTS OF 10 JUNE

█ With the exception of the statement "I was guilty of the first rape," a reference to a previous rape charge of which the defendant had not been convicted, the court admitted defendant's statements made on 10 June 1974. The defendant contends that the statements were not relevant. We do not agree.

These statements show the mental attitude of the defendant as it relates to the crime charged. This mental attitude would be probative of defendant's guilt or innocence and the jury should be allowed to consider these statements along with others in determining the defendant's guilt. We find no error.

## ADMISSION OF THE MULTIPLE EXHIBITS

The jury panel consisted of 14 people, two being excused as alternates before the case was submitted. The State had prepared 28 color photographs of the defendant (14

front and 14 side) and 14 cards containing copies of defendant's known right thumb-print and the latent thumbprint taken from the doorknob of the victim's apartment.

The defendant first contends that the photographs were prejudicial in that their similarity to mug shots suggested that the defendant had a prior criminal record. Defendant is correct that the introduction into evidence of pictures or "mug shots" or other exhibits which suggest a prior arrest record can be error. *State v. Kelly*, 111 Ariz. 181, 526 P.2d 720 (1974). The evidence in this case does not suggest such prior record. The pictures do not appear to be "mug shots," but even if they did, it is clear from the testimony that these pictures were taken after the defendant was arrested in the instant case and as such are not indicative of other crimes. Neither do the thumbprints indicate that the defendant had a prior record. The testimony did not indicate that the thumbprint was taken prior to his arrest in the instant case and the jury could logically assume that defendant's prints were taken after the arrest in the case they were considering.

The defendant further contends that the possession of the individual photographs and thumbprints for each juror was unduly suggestive and prejudicial. The record does not show that the jury had this evidence during the trial, but merely had the evidence when they went into the jury room. We do not find that this is error. That one picture, properly admitted into evidence, could be taken into the jury room with the jury would seem to allow duplicates, properly authenticated, to be admitted so as to provide each juror with an individual picture to peruse at the time of their deliberations. We find no error.

### FAILURE TO REQUEST A CONTINUANCE

At the time of the sentencing the defendant asked for a continuance. The following transpired:

"THE COURT: * * * Is there any reason why sentence should not be pronounced?

"MR. VAUGHN: No legal cause.

I'm aware of, however, Mr. Fears would like to address the Court.

"THE COURT: You have a right to be heard.

"THE DEFENDANT: I'd like a postponement.

"MR. OSBORN: Your Honor, the reasons stated in the Defendant's handwritten letter, dated December 16th, 1976, do not constitute grounds for postponement.

He has other remedies available to him. He's had ample time to obtain any new counsel. Under State versus Scott, State versus Norms, it's the State's position there is no reason at this time why postponement should be granted. We ask the Defendant be sentenced at this time.

"THE COURT: Did you want to be heard, in addition to that letter?

"THE DEFENDANT: Yes, Sir.

I'm seeking new evidence all the time. I feel if I was granted that time, I can have enough time to get a new trial.

"THE COURT: You request—Well, we'll receive this as an exhibit—Exhibit 1 into evidence.

The motion for continuance is denied. Anything you wanted to say before you were sentenced on the Burglary in that case? Anything else?

"THE DEFENDANT: No."

Defendant on appeal contends that there was a conflict with counsel and states that counsel was discharged after sentencing. We find no record that the counsel failed to adequately defend and represent the defendant, and we find no error in denying the motion for a continuance, no good cause for delay having been shown.

### FORM OF VERDICT

The defendant contends that there was error in the form of verdict in case No. CR–93376.

The reporter's transcript filed with this court reflected that the judge read the

forms of verdict to the jury. The reporter's transcript indicated that the judge read the verdict for burglary on 4 June as "guilty" in both forms even though one form would have logically read "not guilty." Only the forms for a verdict of "guilty" are in the record before the court.

When this matter was raised in the appeal, the court reporter filed a corrected transcript stating:

"Please note the following correction in *State vs. Troy David Fears,* CR–93295, CR–93376. This mistake was made during my dictation or in typing the transcript.

"Volume V. Page 601, starting at line 24, should read as follows:

"We, the Jury, duly empaneled and sworn in the above-entitled action, upon our oaths, do find that the Defendant is not guilty of burglary first degree at the apartment located at 151 North Elm, apartment No. 2, City of Gilbert, Arizona, on or about the 4th day of June, 1976."

This corrected transcript is not contested by the defendant. We find no error.

### EXCESSIVE SENTENCES

Defendant finally contends that the sentences were excessive. We do not agree. Where the sentences are within the limits authorized by the statute, we will not disturb the sentences absent an abuse of discretion by the sentencing court. *State v. Smith,* 107 Ariz. 218, 484 P.2d 1049 (1971). In the instant case, there is very little that can be said in mitigation of defendant's conduct. We find no error.

Judgments and sentences affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.