627 P.2d 681

**STATE of Arizona, Appellee,**

v.

**Michael Estacio FERREIRA, Appellant.**

Nos. 4940, 4941.

Supreme Court of Arizona,
En Banc.

March 23, 1981.
Rehearing Denied May 5, 1981.

Robert K. Corbin, Atty. Gen., Phoenix, Stephen D. Neely, Pima County Atty. by Lynne A. Gallagher, Deputy County Atty., Tucson, for appellee.

Richard S. Oseran, Pima County Public Defender by Barry J. Baker Sipe and Charles Babbitt, Asst. Public Defenders, Tucson, for appellant.

HAYS, Justice.

Appellant, Michael Estacio Ferreira, known also as the "apologetic rapist," was charged with numerous burglary and sex offenses which occurred around the University of Arizona campus during September 1977 through September 1978. From the convictions of three counts of armed burglary, two counts of armed rape, two counts of burglary, first degree, two counts of attempted armed rape, one count of attempted rape, first degree, and one count of attempted armed burglary,* he appeals. Appellant was sentenced to concurrent terms of thirty years to life imprisonment on each of the eleven charges. Pursuant to A.R.S. § 13–4031, we take jurisdiction and affirm appellant's judgments of conviction and sentences. The relevant facts will be discussed throughout the presentation of issues.

---

* All charges were in violation of the former criminal code, repealed Oct. 1, 1978, A.R.S. §§ 13–302(A), (C), 13–108, 13–110, 13–611(A), 13–614(A), (C), 13–1647, 13–303, 13–1649.

## I

■ Appellant submits that the imposition of eleven concurrent sentences of imprisonment from thirty years to life for a man of his age, 29, is excessive and "amounts to nothing less than a death sentence for him," contra to the United States Supreme Court ruling in *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977). There, the Court held that the imposition of a sentence of death for the rape of an adult woman is excessive and violates the eighth and fourteenth amendments. We first mention that we are not dealing with a death sentence because appellant is serving 30 years with a possibility of life imprisonment. This is manifestly a different punishment as distinguished by the Court in *Coker*.

"We have the abiding conviction that the death penalty, which 'is unique in its severity and irrevocability,' *Gregg v. Georgia*, 428 U.S., [153] at 187, 96 S.Ct., [2909] at 2931, [49 L.Ed.2d 859] is an excessive penalty for the rapist who, as such, does not take human life." *Id.* at 598, 97 S.Ct. at 2869.

The Court did not hold that rape is undeserving of serious punishment however, stating:

"We do not discount the seriousness of rape as a crime. It is highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim and for the latter's privilege of choosing those with whom intimate relationships are to be established. Short of homicide, it is the 'ultimate violation of self.' It is also a violent crime because it normally involves force, or the threat of force or intimidation, to overcome the will and the capacity of the victim to resist. Rape is very often accompanied by physical injury to the female and can also inflict mental and psychological damage. Because it undermines the community's sense of security, there is public injury as well." *Id.* at 597–98, 97 S.Ct. at 2868.

The imposition of a penalty upon conviction is entirely within the discretion of the trial judge and we will not reduce it unless it clearly appears that the sentence imposed is excessive and is the result of an abuse of discretion. *State v. Patton*, 120 Ariz. 386, 586 P.2d 635 (1978); *State v. Pickard*, 105 Ariz. 219, 462 P.2d 87 (1969). Further,

"[t]he power of this Court to modify sentences should further be tempered by the realization that a defendant appears in person before the trial judge, rendering that judge, in most instances, more able than ourselves to evaluate the defendant and his circumstances. *State v. Smith*, 107 Ariz. 218, 484 P.2d 1049 (1971); *State v. Reid*, 114 Ariz. 16, 559 P.2d 136 (1976)." *State v. Patton, supra,* 120 Ariz. at 388, 586 P.2d at 637.

The circumstances here showed no excessive brutality and there was no indication of physical violence to the victims, but we cannot overlook that each assault was a violent act. Testimony of several of the victims described their individual fear when awakened in the middle of the night by a man hovering over her bed with a knife in his hand, stating he had come to rape her. Sentences of 30 years or more have been upheld in several Arizona rape cases. *See State v. Kelley*, 110 Ariz. 196, 516 P.2d 569 (1973) (concurrent sentences of 30 years to life for two counts of first degree rape with two priors); *State v. Salinas*, 95 Ariz. 62, 386 P.2d 790 (1963) (20–40 years for the crime of second degree rape was not an abuse of discretion). Also, in *State v. Fears*, 116 Ariz. 494, 570 P.2d 181 (1977), defendant received consecutive sentences of 30 years to life for one count of rape and 60 to life for the other rape count which were upheld where the sentences were within statutory limits, as here (see discussion below) and where no abuse of discretion had been shown. We find that 30 years to life for the nature and number of defendant's crimes is not excessive.

## II

■ Appellant urges that he must be resentenced because the present eleven convictions were improperly enhanced by two

prior convictions of receiving stolen property. Appellant contends these open-ended prior convictions were misdemeanors and were never designated as felonies. This argument is totally in apposite. Here, appellant's sentences were enhanced through the application of A.R.S. § 13–1649 of the former criminal code. Section 13–1649 reads in pertinent part:

"A. A person who, having been previously convicted for petty theft, receiving stolen property, shoplifting, contributing to the delinquency of a minor, an offense involving lewd or lascivious conduct, or for any offense punishable by imprisonment in the state prison, commits any crime after such conviction, shall be punished upon conviction of such subsequent offense as follows:

"1. If for any offense punishable for a first conviction by imprisonment for a term exceeding five years, by imprisonment in the state prison for not less than ten years.

. . . . .

"B. The punishments prescribed by this section shall be substituted for those prescribed for a first offense if the previous conviction is charged in the indictment or information and admitted or found by the jury."

We apply this provision to each of the present eleven counts as follows: § 13–1649(A) pertains to a person convicted of receiving stolen property. Certain misdemeanors were intentionally added to this statute by the legislature. *State v. Datsi*, 11 Ariz.App. 132, 462 P.2d 825 (1969). Therefore, the designation of this offense as a misdemeanor or felony is irrelevant.

■ Section 13–1649(A)(1) applies to each of the eleven counts because the language "exceeding five years" relates to the maximum penalty which may be imposed by statute for the subsequent offense. *State v. Scanlon*, 104 Ariz. 187, 450 P.2d 377 (1969); *Valdez v. State*, 49 Ariz. 115, 65 P.2d 29 (1937). Here, the armed burglary, burglary first degree, and armed rape counts all carry a penalty of at least five years to life, A.R.S. §§ 13–302(C), 13–302(B)

and 13–614(C). The attempt counts all carry penalties of "one-half the longest term of imprisonment prescribed upon conviction of the offense so attempted," A.R.S. § 13–110, which calculates to a term of two and one-half years to one-half life imprisonment. *State v. Tellez*, 15 Ariz.App. 130, 486 P.2d 810 (1971). Therefore, all counts carry a maximum penalty which exceeds five years.

■ Next, § 13–1649(B) substitutes a sentence of not less than 10 years for those prescribed for the first offense if the previous conviction is charged in the indictment, as was done here, and admitted. The state complied by timely amending the indictment to allege the two priors. At the sentencing hearing the state moved for admission, without objection, of certified copies of the minute entry of the judgments of conviction. At the hearing, appellant and his attorney indicated that appellant was going to admit the priors. The trial court asked several questions to ensure that appellant understood what rights he was giving up by admitting them, including,

"THE COURT: On or about November 12, 1974, in A–23249 here in Pima County in the Superior Court, were you convicted of the crime of receiving stolen property, a felony?

"MR. FERRIERA: Yes.

"THE COURT: And on November 12, 1974 in A–26350 in the Superior Court here in Pima County were you also convicted of the crime of receiving stolen property, a felony?

"MR. FERRIERA: Yes."

We find no error in the enhancement of the sentence. The term of 30 years to life is within the statutorily prescribed limits of "not less than 10 years," which could encompass a sentence for as long as the defendant's natural life. *State v. Court of Appeals, Division I*, 103 Ariz. 315, 441 P.2d 544 (1968).

■ Furthermore, a prior conviction may be used more than once and the contention that appellant's prior could not be properly utilized to enhance each of the eleven

counts is without merit. *See State v. Evans*, 25 Ariz.App. 315, 543 P.2d 153 (1976).

### III

█ Appellant urges error in the trial court's denial of appellant's motion to suppress all fruits of appellant's unlawful "arrest." At the outset, we set forth the standard for review: A trial court's finding in support of the denial of a motion to suppress will not be reversed in the absence of a clear abuse of discretion. *State v. Dupuy*, 116 Ariz. 151, 568 P.2d 1049 (1977); *State v. Boyer*, 106 Ariz. 32, 470 P.2d 439 (1970). Appellant contends the officer's stop of appellant around 5:30 in the morning on September 15, 1978 was a warrantless arrest, unsupported by probable cause and violative of his fourth amendment rights.

█ We recently held in *State v. Master*, 127 Ariz. 210, 619 P.2d 482, 483 (1980), that, "[w]hen a police officer stops a person on the street and that person is no longer free to walk away, fourth amendment protections arise. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). While arrest requires probable cause or a warrant, there are circumstances where 'a brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.' *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)."

The reasonableness of the officer's stop of appellant is supported by the facts on the record before us. This officer testified at the hearing on the motion to suppress that he responded to a woman's call, reporting a burglary attempt. A block or so before arriving at the woman's residence, the officer noticed a blue 1974 Maverick, the only car parked on the street at that hour. It appeared out of place since it was not parked close to any residential entry or gate. The officer checked the hood and it was warm to the touch. Tennis shoe prints were observed near the car. The officer went on to the complainant's residence where he observed the screens removed from the windows, pry marks on the win-

dowsill and tennis shoe prints all around the area. These prints had definite straight lines with circles near the ball of the feet which were very similar to those the officer had observed in an investigation of an attempted rape two mornings before. For the past twelve months the police department had been searching for the "apologetic rapist," a white male, about 5' 9" to 5' 11" tall, weighing approximately 140 pounds, with bushy dark hair. The officer and several other policemen had been covertly observing the blue Maverick for 30 to 45 minutes when the officer noticed appellant approaching the car, dressed in corduroy pants, no shirt, no shoes, and carrying a newspaper under one arm. Appellant's physical characteristics matched those of the description of the "apologetic rapist" suspect.

The officer's testimony proceeded as follows:

"Q. What did you do at that point?

"A. I recognized him as a subject that I had stopped in July on the 13th or the 14th. When I saw him, I recognized him. I recognized the car parked on Vine as belonging to him. I knew where he lived and I felt sure that he was the suspect we had been looking for in the rapes.

. . . .

"Q. Did you determine what items he had in his possession in July?

"A. He was carrying a pocket knife and a small penlight flashlight.

. . . .

"Q. As soon as you saw him you linked him up with the blue Maverick that you had looked at earlier?

"A. Yes.

. . . .

"Q. Could you determine whether or not Mr. Ferreira recognized you?

"A. I asked him if he remembered me and he said that he did."

At that point the officer asked the appellant for identification and the officer advised him of his *Miranda* rights, advised him he was investigating an attempted burglary in the area and an attempted rape. Appellant was then frisked at the scene and a red Swiss pocket knife was removed

which appeared to have scrapings on it. Appellant expressed his desire to "meet the witnesses against" him and he voluntarily agreed to accompany the officers to the station. Not until his fingerprints had been positively matched with those of the assailant of a previous rape, was he placed under arrest. Even if, as appellant maintains, the stop was a detention tantamount to an arrest, the circumstances at the time of the initial stop and questioning of appellant by the officer constituted probable cause sufficient to support a warrantless arrest. Therefore, appellant was not unlawfully under arrest and the motion to suppress was properly denied.

## IV

Reversible error is claimed by appellant in the trial court's denial of appellant's motion in limine raised pursuant to 17A A.R.S. Arizona Rules of Evidence, rule 609(a). Appellant's latest crime was committed in September of 1978. At that time, rule 609(a) had been effective for a year since its adoption on September 1, 1977. Case law first interpreting rule 609(a) in 1977 required that the determination of whether a prior conviction could be used for impeachment called for the trial court's exercise of discretion and consideration of factors such as age, character of offense, etc. See State v. Henderson, 116 Ariz. 310, 569 P.2d 252 (App.1977). More recently we have held that the "better procedure would be for the court before evidence of a prior criminal conviction is admitted for impeachment purposes, to make an on-the-record finding based on specific facts and circumstances that the probative value of the evidence substantially outweighs the danger of unfair prejudice (citation omitted)." State v. Ellerson, 125 Ariz. 249, 252, 609 P.2d 64, 67 (1980). In Ellerson, despite the fact that there was no explicit, on-the-record finding, we held the complete transcript showed that the court did consider the matters required by rule 609. More recently, in State v. Ethridge, 126 Ariz. 8, 612 P.2d 59 (App. 1980), the Court of Appeals held that "although the trial judge did not make an explicit finding of the rule 609(a) determination, as urged by this court in ... State

v. Cross, 123 Ariz. 494, 600 P.2d 1126 (App. 1979), it is clear that a hearing on the issue was conducted ... we find no reversible error in the ruling here." Id. at 9, 612 P.2d at 60.

From the record on appeal, we find the trial court considered appellant's oral motion in limine, which was untimely made after trial had begun, and that the court implicitly balanced the probative value of the two priors with their prejudicial effect and readily concluded that the convictions were admissible. Although no specific reasons were set forth by the court, an explicit statement of the judge's finding was made after insistence by the prosecution that the court abide by the formalities established by Ellerson, supra, and Cross, supra.

We find no abuse in the judge's denial of the motion in limine.

The judgments of conviction and the sentences are affirmed.

STRUCKMEYER, C. J., and HOLOHAN, CAMERON and GORDON, JJ., concur.