501 P.2d 383

The STATE of Arizona, Appellee,

v.

Walter Gene MILLER, Appellant.

No. 2282.

Supreme Court of Arizona, In Banc.

Sept. 27, 1972.

**442**

Gary K. Nelson, Atty. Gen. by William P. Dixon, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a judgment of guilt to the crime of first degree (nighttime) burglary (§ 13–301 et seq., A.R.S.) following a jury verdict in the Superior Court for the County of Maricopa. Defendant received a one to three year sentence.

We are called upon to determine:

1. whether the lower court erred in refusing defendant's requested instruction dealing with the inferences which might be drawn from the State's failure to introduce evidence, and

2. whether it was error to refuse to intruct the jury on lesser included offenses of forcible trespass and petty theft.

The facts necessary for a determination of this matter are as follows. On 20 August 1970, at approximately 10:46 p. m., Officer Kent Keller, an off duty Phoenix policeman, was riding in a private automobile driven by one Larry Robinson. Officer Keller was showing Robinson the beat Keller patrolled in southwestern Phoenix. As the two approached the area of 19th Avenue and Buckeye Road they noticed something unusual occurring within the enclosed area of the Gulf Service Station on the southeast corner of the intersection.

Officer Keller testified at the trial that he "observed two subjects standing in an interior area of a closed service station." Because of the actions of these individuals and the fact that the station appeared to be closed, Officer Keller and Robinson circled the block and returned to the station at a very slow rate of speed so that they might further observe the actions of the two individuals. Officer Keller testified that he saw defendant Fullbright take a tire from an overhead rack within the fenced enclosure of the service station and throw it over the eight foot high chain link fence where it was caught by defendant Miller. Officer Keller's testimony indicates he was able to get a clear look at both of the defendants' faces, in spite of the fact that it was night, because of the numerous lights in the station area. It appears from the record that during this time Officer Keller and Robinson were within 30 to 75 yards of the defendants.

While continuing to observe the defendants, Officer Keller instructed Robinson to cross the intersection where there was a standing pay telephone located. Using this phone, Keller called the police department. During this time Officer Keller observed the defendants as they ran across the

street. Both were carrying a tire under each arm.

While Officer Keller was still at the phone booth, a police squad car approached and Keller joined the officers within. Together they pursued and arrested the defendants who, after leaving the tires at a Standard-Chevron Station across the street from the Gulf Station, fled on foot from the vicinity when the police car arrived.

Walter Gene Miller and Cosby Lorenzo Fullbright were charged by information filed in the Superior Court of Maricopa County with first degree burglary. The case proceeded to trial where the two defendants were represented by different lawyers. On direct examination during the trial, Officer Keller testified, over defense objection, that he observed three apparently new tires each bearing a Gulf emblem in a stack of tires at the Standard-Chevron Station:

"Q (BY MR. LEWTER) And what were the markings?

"A Tires in the rack, approximately half of them contained no identifying mark on the tread other than the sidewall mark, different brand names.

About half of the tires in the rack contained Atlas brand, apparently new tires with the sticker right over the tread.

The tires in the stack here contained three tires with Gulf emblem and size stamps on the tread, apparently new tires.

I believe there was two more there that did not have tread markings stamped on them.

"Q And were they just sitting on the ground?

"A They were laying flatways on the ground stacked up.

Officer Donovan H. Stovall of the Phoenix Police Department testified concerning the Gulf Station:

"A I and Officer Kohlbrecher did examine the area there. There was an area just, oh, on the south end of the service station, and we examined that and we found two more new automobile tires in that area with some older tires. We did take a few more measurements, as I say, and—

"Q Where were these other two tires located?

"A They were in an area I guess at the service station there. This is where they discarded their old tires, and they were two brand new tires over in that area.

"Q Were these enclosed in anything there?

"A I guess it is somewhat of an enclosure. It is a fence and the building would be the enclosure, and this was a small opening so that you could get in and out for the tires or whatever."

Though requested by the defendant, the trial court refused to instruct the jury regarding the inferences that could be drawn from the State's failure to introduce the tire evidence at the trial.

The defendant, in addition, requested the trial court to instruct the jury on the lesser included offenses of forcible trespass and petty theft. The trial court also denied the latter request.

The jury returned a verdict finding the defendant guilty of first degree burglary. Fullbright was granted probation and apparently chose not to appeal.

PRODUCTION OF EVIDENCE

■ It is defendant's contention that the tires were crucial to his attempt to discredit the eyewitnesses against him. He argues that the physical presence of the tires were necessary in order for the jury in the courtroom to measure and feel them so they could make an accurate judgment as

to the ·possibility of throwing such tires over the eight foot chain link fence.

Defendant argues therefore that the trial court erred when it failed to grant the following requested instruction:

"If you find that the Plaintiff, the State of Arizona, has destroyed, caused to be destroyed, or allowed to be destroyed any evidence whose contents or quality are in issue, you may infer that the true fact is against their interest."

We approved this instruction in State v. Willits, 96 Ariz. 184, 393 P.2d 274 (1964) and defendant relies heavily on that case.

In the Willits case, supra, the defendant was convicted of attempting to explode dynamite in a dwelling house with intent to injure, intimidate or terrify his former wife. He contended that "the dynamite was in such a condition that it could not be exploded." State v. Willits, supra, at 187, 393 P.2d at 276. The dynamite in question had been destroyed by officials at Davis-Monthan Air Force Base at the request of the State for safety reasons. It is clear in the Willits case that the explosives were crucial to the defendant's argument that the dynamite could not be exploded.

In the instant case, there is no evidence that the tires were destroyed or were not available had the defendant so requested. State v. Green, 103 Ariz. 80, 436 P.2d 899 (1968). Further the defendant has not shown that the tires would be helpful to his defense. The size and weight of automobile tires are within the knowledge of a jury and they would be able to draw a valid conclusion from the evidence as to whether the defendant actually threw the tires over the fence with or without the presence of the tires in the courtroom.

Also we have stated:

"A[s] stated heretofore, the introduction of the missing items would have contributed nothing. Had they still been in existence at the time of trial the State would have been under no obligation to offer them as evidence. And the instruction still would have been proper.'

'There is· no compulsion on the prosecution to call any particular witness or to make any particular tests so long as there is fairly presented to the court the material evidence bearing upon the charge for which the defendant is on trial.' People v. Chaplin, 145 Cal. App.2d 740, 303 P.2d 365 (1965); People v. Tuthill, 31 Cal.2d 92, 187 P.2d 16 (1947)." State v. Maloney, 105 Ariz. 348, 354, 464 P.2d 793, 799 (1970).

## LESSER INCLUDED OFFENSES

Defendant also contends that the trial court erred in refusing to instruct the jury that the defendant could be found guilty of the crime of the allegedly lesser included offense of forcible trespass as defined in § 13-711 A.R.S.:

"A person using any force or violence in entering upon or detaining lands or other possessions of another, except in the cases and manner allowed by law, is. guilty of a misdemeanor."

And the lesser included offense of petty theft is defined as follows:

"A. Theft is:

"1. Feloniously stealing, taking, carrying, leading or driving away the personal property of another." § 13-661, subsec. A, par. 1 A.R.S.

Burglary is defined as:

"A. A person entering a building, dwelling house, office, room, apartment, tenement, shop, warehouse, store, mill, bar, stable, garage, tent, vessel, railroad car or motor vehicle, trailer or semitrailer, with intent to commit grand or petty theft, or any felony, and a person entering an outhouse or other building not enumerated in this section with intent to commit a felony, is guilty of burglary." § 13-302, subsec. A A.R.S.

A defendant is entitled to an instruction on his theory of the case if reasonably supported by the evidence. State v. Randolph, 99 Ariz. 253, 408 P.2d 397 (1965); State v. Ross, 107 Ariz. 240, 485 P.2d 810 (1971); Rule 272, Rules of Criminal Procedure, 17 A.R.S. We cannot agree, however, that the evidence supported an instruction on the two offenses as lesser included offenses. As to forcible trespass, the Arizona burglary statute does not contain the common law requirement of breaking and entering. It only requires that a person enter a building with the intent to commit theft or any felony. State v. Rood, 11 Ariz.App. 102, 462 P.2d 399 (1969). Arizona's forcible trespass statute provides that the entry must be accompanied by force or violence. As burglary can be committed without the use of force of violence, forcible trespass is not a lesser included offense. State v. Hatten, 106 Ariz. 239, 474 P.2d 830 (1970). Neither is theft or petty theft a lesser included offense of burglary. As we have stated: "Burglary and theft are two separate and distinct acts. To constitute burglary it is not necessary that theft be committed." State v. Hutton, 87 Ariz. 176, 178, 349 P.2d 187, 188 (1960).

"* * * instructions on lesser offenses are justified only when there is evidence upon which the jury could convict of a lesser offense and, at the same time, find that the state had failed to prove an element of the greater crime. (citations omitted) In other words, the state of the record must not be such that defendant can only be guilty of the crime charged or not at all." State v. Schroeder, 95 Ariz. 255, 259, 389 P.2d 255, 257 (1964), cert. den. 379 U.S. 939, 85 S.Ct. 347, 13 L.Ed.2d 350 (1964).

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.