656 P.2d 1272

**STATE of Arizona, Appellee,**

v.

**Herbert Lewis WILLIAMS, Appellant.**

**No. 1 CA–CR 5371.**

Court of Appeals of Arizona,
Division 1, Department B.

Dec. 14, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., and Joel M. Glynn, Asst. Atty. Gen., Phoenix, for appellee.

Thomas A. Moran, Yuma, for appellant.

## OPINION

GREER, Judge.

Seventy year old Herbert Lewis Williams was indicted by the Yuma County Grand Jury on March 12, 1981, for the crimes of forgery, a class four felony, in violation of A.R.S. § 13–2002(A)(3), and theft, also a class four felony, in violation of A.R.S. § 13–1802(A)(3). On April 2, 1981, pursuant to a written plea agreement, defendant Williams pled guilty to the indicted charges, in exchange for the state's agreement not to allege any prior convictions. The trial court subsequently imposed the presumptive four year sentence for each conviction, and ordered that they be served consecutively.

Defendant's counsel thereafter filed a brief in compliance with *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969), in which he raised as an arguable issue the question of whether the trial court had abused its discretion by imposing an excessive sentence. Upon reviewing the record, this court noted an additional arguable issue of law, to wit: whether the sentence imposed by the trial court was in violation of A.R.S. § 13–116, Arizona's double punishment statute. An order was issued requiring both parties to address that issue and file briefs thereon, and ordering the Attorney General's Office to respond to the issue raised by defendant's initial brief. The facts necessary to a resolution of these two issues are as follows.

On December 2, 1980, the defendant opened a checking account at the State Bank in Parker, Arizona (State Bank), by depositing $100.00. On December 4, 1980, the defendant wrote a check for $50.00 against the initial deposit. On December 5, 1980, the defendant made an additional deposit of $945.00, using a forged check that was drawn on the Bank of America of Walnut Creek, California.[1] The defendant thereafter wrote eight checks to various businesses against his account. Although unclear from the record, it appears that four of the eight checks were paid by the State Bank, and four were returned for insufficient funds.[2] The State Bank claimed a total loss of $956.85. The four returned checks totaled $56.00.

■ Initially, defendant contends that the imposition of two consecutive four year sentences was excessive in light of his advanced age and history of alcoholism. The imposition of a sentence within the statutory limit is entirely within the discretion of the trial court. *State v. Ferreira,* 128 Ariz. 530, 627 P.2d 681 (1981). Any challenge thereto must be carefully scrutinized because the trial judge is in the best position to evaluate a defendant. *See State v. Gordon,* 125 Ariz. 425, 610 P.2d 59 (1980). Furthermore, we will not disturb a sentence within the statutory limit unless it is clearly excessive and reveals an abuse of discretion. *State v. Limpus,* 128 Ariz. 371, 625 P.2d 960 (App.1981); *State v. Becerill,* 124 Ariz. 535, 606 P.2d 25 (App.1979). An abuse of discretion is characterized by arbitrariness or capriciousness, and a failure to conduct an adequate investigation into the facts relevant to sentencing. *State v. Gordon; State v. Patton,* 120 Ariz. 386, 586 P.2d 635 (1978); *State v. Limpus.*

■ With these rules of law in mind, we turn to an examination of the sentences imposed. Although a defendant's age and a history of alcoholism are mitigating factors which may induce a trial court to reduce a presumptive sentence in some cases, they are not the only relevant factors to be looked to. The trial judge may properly

---

1. A telephone interview with the purported drawer, a Ms. Ann Spencer, revealed that she had closed her account with the Bank of America and discarded the checks in June, 1978.

2. The State Bank was apparently notified by the Bank of America that the Spencer checks would not be honored, but not until it had already paid four of the checks.

consider prior crimes and the criminal character and history of the defendant. *State v. Ellis*, 117 Ariz. 329, 572 P.2d 791 (1977); *State v. Sowards*, 99 Ariz. 22, 406 P.2d 202 (1965). Defendant Williams has an extensive criminal record, dating back to 1949 when he was convicted of assault and sentenced to thirty months confinement. In 1950, he was convicted of conspiracy to commit larceny and sentenced to thirty months confinement. In 1961, defendant was convicted of unlawful transportation of a motor vehicle and sentenced to a three year prison term. In 1972, he was committed to the Georgia State Prison. In 1974, he was committed to the South Carolina State Prison for forgery. In 1976, defendant was again arrested for forgery in South Carolina. Finally, defendant was released from jail approximately two months prior to committing the crimes herein for almost an identical conviction in California.

All indications point to the defendant repeating his illegal activities if given the opportunity. The protection of society from such a gross disrespect of our legal system is certainly an aggravating factor which may be considered by the trial court when determining the length of sentence to impose. In light of this factor, we do not believe the court abused its discretion by imposing the presumptive term, even in light of the defendant's advanced age. With regard to the defendant's history of alcoholism, we find no evidence in the record that he was intoxicated at the time of either crime. Moreover, even assuming this factor had an effect on the defendant's behavior, we do not feel it required the court to impose less than the presumptive term.

■ With regard to the consecutive nature of the sentences, A.R.S. § 13–708 allows for the imposition of consecutive sentences, provided the reasons therefore are set forth on the record. In sentencing defendant Williams, the trial court revealed its familiarity with the presentence report and made the following observation:

> The reason for consecutive sentences is that the record is extensive, Mr. Williams,

of the same sort of conduct. It may not be a three million [dollar] case, but it seems to continue to go on and on and on. April 30, 1981, Tr., pg. 13. The trial judge was obviously referring to the defendant's prior involvement in similar crimes. Thus, it is clear the court based its decision upon what we have already determined to be an important societal interest. The court's decision was neither arbitrary or capricious. Accordingly, it is our ruling that the trial judge did not abuse his discretion in imposing consecutive four year terms of imprisonment.

■ Turning to the defendant's second argument, he contends that the sentences imposed violate Arizona's double punishment statute. A.R.S. § 13–116 provides, in relevant part:

> An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent.

In order to determine whether the statute has been violated, we must apply the "identical elements test." *State v. Rumsey*, 130 Ariz. 427, 636 P.2d 1209 (1981); *State v. Arnold*, 115 Ariz. 421, 565 P.2d 1282 (1977); *State v. Tinghitella*, 108 Ariz. 1, 491 P.2d 834 (1971). Under this test, we must eliminate the facts supporting the elements of one charge and determine whether the facts remaining support the elements of the other charge.

In *State v. Duran*, 118 Ariz. 239, 575 P.2d 1265 (1978), the defendant was the Administrative Services Officer with the Office of the Registrar of Contractors. It was his responsibility to supervise the collecting, depositing and accounting of various funds collected by the state agency. In the course of performing his duties, he withheld a number of checks from a deposit that was supposed to be deposited with the State Department of Finance. When he received subsequent deposits, he substituted the stolen checks for like amounts of cash. He would then alter the "statements of receipts" to reflect an increase in the amount of cash and a decrease in the amount of

checks deposited. Thus, he was able to temporarily disguise his embezzlement of the deposit money. He was subsequently convicted of thirty-eight counts of altering public records and thirty-seven counts of embezzlement. In ruling that the double punishment statute was not violated, this court reasoned that, "the alteration [of the 'statements of receipts'] was completed when appellant laid down his pencil or pen with the intent to achieve his own unlawful purposes. The subsequent or previous appropriation of the cash itself was a separate crime from that of altering the records to cover it up." *Id.* at 247, 575 P.2d at 1273.

In *State v. Sutton,* 27 Ariz.App. 134, 551 P.2d 583 (App.1976), the defendant was convicted of one count of possession of a stolen credit card and two counts of forgery. In determining that the double punishment statute was not violated, this court concluded:

> [T]he elements of a crime of possession of a credit card with intent to defraud were satisfied before the actual signing of the slips which constituted the forgeries.
>
> When the defendant forged the name of Mr. Jones to the sales slips, he embarked upon separate 'acts' within the meaning of A.R.S. § 13–1641.

*Id.* at 139, 551 P.2d at 588.

In the instant case, the elements of forgery, as prescribed by A.R.S. § 13–2002(A)(3), are: 1) offering or presenting (whether accepted or not), 2) a forged instrument, 3) with intent to defraud. A person commits theft under A.R.S. § 13–1802(A)(3), when he: 1) knowingly, 2) obtains property or services of another, 3) by means of a material misrepresentation, 4) with the intent to deprive the person of such property or services.

The crime of forgery is complete when one either makes or passes a false instru-

ment with intent to defraud. *State v. Maxwell,* 95 Ariz. 396, 391 P.2d 560 (1964); *State v. Martin,* 2 Ariz.App. 510, 410 P.2d 132 (App.1966). It is not necessary that the instrument be accepted. Thus, defendant Williams committed the crime of forgery at the instant he presented the forged check to the bank employee, regardless of whether it was accepted for deposit, and regardless of whether he ever received any money. Thus, as in *State v. Duran, supra,* and *State v. Sutton, supra,* the elements of the crime of forgery were completed prior to the defendant's embarking upon the subsequent crime of theft. Moreover, once the facts supporting the elements of fraud are removed, the remaining facts support the crime of theft. Each time the defendant wrote one of the subsequent eight checks he implicitly represented that he had on deposit with the State Bank sufficient funds to cover the face amount of the check.[3] F. Whitney, *The Law of Modern Commercial Practices* § 341 (1965). And, it is clear the defendant wrote the checks for the sole purpose of obtaining and depriving others of property and services he knew did not belong to him.[4]

The defendant asserts, however, that the presentation of the forged instrument is the only misrepresentation he made. The dissent agrees, and apparently believes the defendant had the unqualified right to write checks against the account once it was credited with the forged check. A review of the applicable provisions of the Uniform Commercial Code demonstrates the fallacy of this line of reasoning.

The State Bank was both a depository and a collecting bank under the provisions of A.R.S. § 44–2605(1)(4). Defendant Williams was a customer of the State Bank as defined in § 44–2604(A)(5), and the owner of the forged check. When defendant Williams deposited the forged check with the bank, a strong presumption

---

**3.** The representation is clearly made to the payee of the check. We are of the opinion that the representation also extends to the payor bank; in this case, the State Bank.

**4.** On the checks that were not paid by the State Bank, the victim was the individual payee of each check. However, on the four checks that were paid by the State Bank, the property obtained by the defendant was money belonging to the State Bank.

arose that the State Bank was merely an agent for collection and that any settlement given for the check was provisional. A.R.S. § 44–2610(A). In other words, unlike the situation where a customer deposits cash into a checking account, the deposit of a check does not entitle a customer to immediately draw upon that deposit. In the normal situation, the provisional credit given by a depository-collecting bank does not become "firm," and therefore payable as a matter of right, until such time as the bank learns, or should have reasonably learned, that it had received payment or "final settlement" on the check from the payor bank or an intermediary bank. A.R.S. § 44–2622(D)(1). *See also,* Uniform Commercial Code, Uniform Laws Annotated § 4–213 official commentary at 113, note 10 (1968). At that point the relationship between the bank and its customer becomes that of debtor and creditor rather than principal and agent, *Id.* at § 4–201, note 4, and the customer does have the right to draw upon the account.

The agency scheme created by the code is supported by logic and common sense. It would certainly be unfair to require a bank to immediately cash every check presented to it by one of its checking account customers, or to make funds available as a matter of right once a check is deposited for credit, prior to the depository bank being paid for the check. The code provides a system for the speedy collection of a customer's check, while also offering protection to all parties involved.

■■■ Defendant Williams, an apparent veteran of banking circles, was apparently aware that the State Bank was not required to, and probably would not immediately cash the forged check. Otherwise, he would certainly have cashed the forged check and made a hasty retreat to search for other likely victims. Instead, he deposited the check to his account, hoping the bank would advance funds before being notified that the check was a forgery.

Whether a bank will permit such an advance to be made against the provisional credit depends upon the customer and past dealings, *American Exchange Bank, Collinsville, Oklahoma v. Cessna,* 386 F.Supp. 494 (N.D.Okla.1974), and is done merely as a favor and matter of convenience by the bank. *See Davies & Vincent v. Bank of Commerce,* 27 Ariz. 276, 232 P. 880 (1925). In the instant case, the State Bank chose to make an advance upon the provisional credit afforded the defendant. However, it was an advance of the bank's money; not a payment of money belonging to the defendant. This becomes clear when it is recognized that a depository bank normally has a number of remedies in such a situation:

1. Charge back advance against other funds in the customer's account, A.R.S. § 44–2621, or

2. Keep the item (check) and demand refund from the customer since the bank has a security interest in the item to the extent of withdrawals or advances against it. A.R.S. § 44–2610(A) and § 44–2617.

Thus, the defendant did not obtain any money from the State Bank until such time as the bank advanced money against the provisional credit given as a result of the forged check.

■■■ It should also now be clear that the defendant did in fact make a misrepresentation each and every time he wrote one of the eight checks. As Justice Marshall stated in a dissenting opinion in *Williams v. United States,* —— U.S. ——, 102 S.Ct. 3088, 73 L.Ed.2d 767 (1982):[5]

In giving a check, the drawer impliedly represents that he has on deposit with the

---

**5.** Although the majority opinion in *Williams v. United States* found that an intricate check kiting scheme did not involve the making of a "false statement" for the purpose of violating 18 U.S.C. § 1014, a careful review of that opinion leads us to the conclusion that the court's holding is limited to the federal statute at issue therein. It is readily apparent the court felt the legislative history of the statute did not support a finding that "check kiting" constituted a "false representation" under the statute. In the instant case, however, the legislature intended bad checks to be included in the definition of "material misrepresentation" under A.R.S. § 13–1802(A)(3).

drawee bank funds equivalent to the face amount of the check .... [T]hose who write or accept checks in exchange for goods, services or cash undoubtedly understand that this implicit representation has been made. A check is accepted with the expectation that it will be paid in the normal course of collection. A banker who knew that the drawer did not have funds on deposit would not credit the check to the drawer's account or reduce it to cash.

*Id.* ——— U.S. at ———, 102 S.Ct. at 3098. Moreover, the legislative history of the Arizona Criminal Code supports our conclusion. In discussing Arizona's theft statute, the Arizona Criminal Code Commission stated:

"Material misrepresentation," as defined in § 1800(h), [codified as A.R.S. § 13–1802(A)(3)], unlike present law, covers not only statements of fact, but also deceptive physical acts such as the use of *false checks.*

Arizona Criminal Code Commission, Arizona Revised Criminal Code § 1801(a)(3) commentary at 181 (1975); emphasis added.

We are not persuaded by the defendant's reliance on *State v. Schwartz,* 14 Ariz.App. 531, 484 P.2d 1060 (1971). That case was decided prior to *State v. Tinghitella, supra,* and, although it recited the identical elements test, it employed a "but for" analysis strikingly similar to the "transactional test" previously rejected by our supreme court.

 In any event, the intent required to commit each crime is a matter for determination by the trier of fact. *Id.* at 4, 491 P.2d at 837. We find no abuse of the court's discretion by its implicit finding that the defendant had an independent intent to commit the two crimes herein.

Finally, because this appeal was instituted pursuant to *Anders v. California, supra,* we have further searched the record for fundamental error and found none. The record convinces us that defendant Williams was represented by competent counsel at all stages of the proceedings and is represented by competent counsel on this appeal. The plea was made and accepted in full compliance with the Arizona Rules of Crim-

inal Procedure and the defendant advised of all rights he was waiving. Finally, the sentencing hearing was held in full compliance with the defendant's constitutional and statutory rights.

Accordingly, the judgment and sentence of the trial court are hereby affirmed.

GRANT, J., concurs.

FROEB, Presiding Judge, dissenting:

Defendant pled guilty to one count of forgery and one count of theft and was sentenced to consecutive terms of four years on each. I would affirm the conviction and sentence on the forgery count. I would vacate the conviction and sentence on the theft count on the ground that sentences on both constitute double punishment in violation of A.R.S. § 13–116.

The essential facts are simple. Defendant presented a forged check in the amount of $945.00 to the State Bank of Parker where it was deposited to his checking account. The bank gave defendant immediate credit against which he thereafter wrote eight checks to various persons. There is some question as to whether the bank paid all or only some of the checks. In my view, the theft charge must fail, whichever is the case, when the identical elements test is applied.

The crime of forgery was complete when defendant presented the forged check to the bank for deposit. Defendant was charged and convicted of forgery in violation of A.R.S. § 13–2002(A)(3). A person commits forgery under this section when he:

1. with intent to defraud
2. offers or presents, whether accepted or not,
3. a forged instrument.

Defendant was charged and convicted of theft in violation of A.R.S. § 13–1802(A)(3). A person commits theft under this section when he:

1. obtains property of another
2. by means of any material misrepresentation

3. with intent to deprive him of such property.

It should be noted that defendant was charged with theft of money from the State Bank of Parker, not the persons to whom the eight checks were written. Thus the charge, if it has any validity, must necessarily relate to those of the eight checks which the bank in fact paid.

In my view, when the elements of the forgery charge are eliminated under the identical elements test, there is no basis upon which the theft charge can stand. The theft charge must be supported by a finding that the money paid out by the bank for the checks was obtained by a "material misrepresentation." The only "material misrepresentation" to the bank in the entire sequence ws the fraud upon which the forgery was based. When that is eliminated, as it must be under the identical elements test, there is no "material misrepresentation" left to sustain the theft charge.

That this should be so is not surprising in view of the fact that forgery under A.R.S. § 13–2002(A)(3) approximates, if not duplicates, the offense of theft by misrepresentation under A.R.S. § 13–1802(A)(3) whenever the fraudulent pretense is used to obtain property or services. *See* Gerber, *Criminal Law of Arizona*, p. 279 (1978).

I find *State v. Schwartz*, 14 Ariz.App. 531, 484 P.2d 1060 (1970) is on point and supports my conclusion that the double punishment statute has been violated. Even though the decision predates *State v. Tinghitella*, 108 Ariz. 1, 491 P.2d 834 (1967), it applies the identical elements test which must be applied here. On the other hand, *State v. Duran*, 118 Ariz. 239, 575 P.2d 1265 (1978), relied upon by the majority, is distinguishable on its facts.

In conclusion, I would affirm the conviction and sentence on the forgery count and vacate the conviction and sentence on the theft count.