650 P.2d 1246
**STATE of Arizona, Appellant,**

v.

**Richard S. BERRY and Richard Karl Kerekes, Appellees.**

**No. 1 CA–CR 5062.**

Court of Appeals of Arizona,
Division 1, Department B.

June 22, 1982.

Rehearing Denied Aug. 20, 1982.

Review Denied Sept. 16, 1982.

Thomas E. Collins, Maricopa County Atty. by Howard Schwartz, Deputy County Atty., Phoenix, for appellant.

Robert L. Storrs, Phoenix, for appellee Kerekes.

Richard S. Berry, in pro. per.

## OPINION

JACOBSON, Presiding Judge.

This case prevents novel questions regarding the effect of a prior federal prosecution on criminal proceedings in the State of Arizona. The issues concern the possible collateral estoppel effect of the federal prosecution, as an aspect of double jeopardy under *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) and the statutory defense provided by A.R.S. § 13–112.[1]

The facts pertinent to this narrow inquiry are that in December, 1977, defendants Richard Berry and Richard Kerekes were indicted by a federal grand jury in Reno, Nevada for 10 counts of violation of federal statutes, including mail fraud, fraud by wire, interstate transportation of money obtained by fraud and travel in interstate commerce, aiding and abetting and conspiracy. In June of 1978, Berry pled guilty to

---

1. Formerly § 13–146. Transferred and renumbered as § 13–112 by Laws 1977, Ch. 142, § 40, effective October 1, 1978.

conspiracy and the remaining counts were dismissed as to him; Kerekes went to trial and was found guilty of all 10 counts.

The essence of the federal charges was that the defendants, with others, conspired to and did devise a scheme to defraud and obtain money from victims who were seeking letters of commitment and credit against which mortgage loan financing could be obtained. In fact, the letters of commitment and credit were worthless. As a result of the scheme, numerous victims throughout the country paid the defendants an advance fee for the letters. The defendants accepted the advance fees, knowing that the commitment letters were worthless and that they were unable to provide the financing. As a result none of the mortgage financing was ever obtained. The federal charges specifically named six victims of the fraud. Although it appears that the federal government knew of two Arizona victims, Dee Clegg and Lonnie Skinner, the federal prosecutors chose not to charge the defendants with separate substantive crimes involving these victims.

In March of 1980, the state obtained an indictment in Maricopa County Cause Number CR–111286 which charged Berry, Kerekes and another with conspiracy and two counts of grand theft by false pretenses. The conspiracy alleged was the same as that charged in the federal proceeding, and the two remaining counts were theft charges in regard to the victims Skinner and Clegg. The defendants moved to dismiss the conspiracy count, apparently on the grounds that it constituted double jeopardy and violated A.R.S. § 13–112. At oral argument on the motion, the state agreed that the conspiracy count should be dismissed. Because of other procedural difficulties with the case, the state agreed to the dismissal of the case in its entirety without prejudice, and sought another indictment on the two substantive charges of grand theft.

In July of 1980, the state obtained another indictment in this case, Cause Number CR–113556. This case alleges two counts of theft by false pretenses as to the victim Clegg (Count I) and victim Skinner (Count II). The defendants moved to dismiss Count II on double jeopardy (collateral estoppel) grounds, and the trial court on October 24, 1980, granted the motion. The state filed a motion to reconsider the dismissal on November 4, 1980, and the defendants filed a motion to dismiss Count I as well, also on collateral estoppel grounds. The state's motion to reconsider was denied on November 24, 1980, and the defendant's motion to dismiss Count I was likewise granted on the same date. The state on December 1, 1980, appealed from the orders of the trial court in granting both motions to dismiss and in denying the motion for reconsideration as to the dismissal of Count II. A.R.S. § 13–4032(1).[2]

■ The defendants have raised, by a motion to dismiss, the question of this court's jurisdiction to entertain the state's appeal of the dismissal of Count II of the indictment. As previously indicated, the time sequences applicable to Count II are that the court order dismissing Count II was entered on October 24, 1980, and the state's motion to reconsider that order was filed on November 4, 1980. On November 24, 1980, the motion to reconsider was denied and on December 1, 1980, the state appealed. 17 A.R.S., Rules of Criminal Procedure, Rule 31.3, requires that a notice of appeal be filed within 20 days of the order being appealed. The time for filing of a timely notice of appeal is essential to the exercise of jurisdiction by this court over the appeal. *State v. Good,* 9 Ariz.App. 388, 452 P.2d 715 (1969).

The notice of appeal filed December 1, 1980, is more than 20 days from the order dismissing Count II, but is within 20 days from the order denying the motion to reconsider. The question then becomes whether an order denying a motion to reconsider is itself an appealable order, or if not, whether a motion to reconsider, extends the time for appealing the order of dismissal.

**2.** Amended by Laws 1979, Ch. 74, § 2; Laws 1980, Ch. 50, § 6.

■ The right to appeal is strictly statutory. *State v. Valdez,* 48 Ariz. 145, 59 P.2d 328 (1936). A.R.S. § 13–4032[3] provides that:

An appeal may be taken by the state from:

1. An order dismissing an indictment, information or complaint or count of an indictment, information or complaint.

\* \* \* \* \* \*

5. An order made after judgment affecting the substantial rights of the state.

Since an order dismissing a count of an indictment is specifically made appealable, we conclude that an order denying reconsideration of that appealable order is not "an order made after judgment affecting the substantial rights of the state." The state has not argued that it is. We therefore conclude that an order denying reconsideration of an order of dismissal is not an appealable order in and of itself so as to vest jurisdiction in this court to consider it.

■ The state argues that a motion to reconsider is properly allowable under Rule 16.1(d). We agree. However, the right to file a motion to reconsider does not answer the question of whether the filing of such a motion extends the time for appeal. The filing of a motion affecting an appealable order does not extend the time for filing an appeal from that order, in absence of a rule so providing. *In the Matter of Maricopa County, Juvenile Action No. JS–1109,* 26 Ariz.App. 518, 549 P.2d 613 (1976). Unlike the Rules of Civil Appellate Procedure (See A.R.S. 17A, Rule 9(b)), the Rules of Criminal Procedure do not provide that the filing of certain types of motions extends the time for filing an appeal. Determinable finality is an important consideration and therefore there must be a basis in the rules for a motion which will extend the time for appeal. *Cf. Maganas v. Northroup,* 112 Ariz. 46, 537 P.2d 595 (1975).

■ We hold that the filing of a motion to reconsider an order dismissing a count of an indictment does not extend the time for filing a notice of appeal from the order of dismissal. Since the notice of appeal was filed more than 20 days from the entry of the order of dismissal, we have no jurisdiction over the appeal of the dismissal of Count II, except to order the dismissal of this appeal as to that count.

However, we do have jurisdiction of the state's timely appeal as to the dismissal of Count I, and therefore proceed to consider the merits of that appeal.

The first issue presented by the defendants is whether the State of Arizona's prosecution of them, subsequent to the federal prosecution, is barred by principles of collateral estoppel as an aspect of double jeopardy, as enunciated in *Ashe v. Swenson, supra.* In that case, three or four armed men robbed six poker players and the defendant was charged in separate counts with robbery of each of the six men, and with auto theft. He was acquitted in a Missouri state court on the charge of robbery of one of the victims, and then subsequently tried and convicted on a second count of robbery of a different victim. The United States Supreme Court held that the federal rule of collateral estoppel, embodied in the United States Constitution's Fifth Amendment guarantee against double jeopardy, precluded the second prosecution. The state could not be allowed to relitigate the single issue which rationally could have been in dispute, i.e., the identity of the defendant. In applying this rule, the Court said that the initial proceeding must be examined, to see if the prior determination could have been based on an issue other than the one which the defendant sought to foreclose from reconsideration. If the prior determination could not have been based on a different issue, then that issue would be foreclosed. *See also State v. Little,* 87 Ariz. 295, 350 P.2d 756 (1960); *State v. Forteson,* 8 Ariz.App. 468, 447 P.2d 560 (1968);

**3.** The quoted language is from the amendment to this statute, (Laws 1980, Ch. 50 § 6), effective August 31, 1980. Since the effective date was prior to the trial court order dismissing the count and the filing of the notice of appeal, although subsequent to the filing of the indictment, we have assumed the amendment is applicable for the purposes of this appeal. *See State v. Fridley,* 126 Ariz. 419, 616 P.2d 94 (App.1980).

■ In our opinion, constitutional provisions against double jeopardy or collateral estoppel as an aspect of double jeopardy are simply not applicable when the two prosecutions are by different sovereigns.

The requirements of the rule of collateral estoppel are set forth in Annot., Res Judicata—Criminal Cases, 9 A.L.R.3rd 203 at 214 (1966):

A common statement of the rule of collateral estoppel is that where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action. It has also been said that the doctrine of collateral estoppel operates, following a final judgment, to establish conclusively a matter of fact or law for the purposes of a later lawsuit on a different cause of action between the parties to the original action. To invoke the principle of collateral estoppel there must exist a final judgment rendered upon the merits by a court of competent jurisdiction *in a prior action between the parties,* upon a matter within its jurisdiction, and directly determining a question of fact distinctly put in issue and not merely collaterally in question. (Emphasis added.)

Regarding the constitutional provisions which guarantee freedom from a double jeopardy, it is generally recognized that a federal prosecution is no bar to a state's subsequent prosecution of the same person for the same acts, because the two governments are separate political sovereigns. *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) *reh. den.,* 360 U.S. 907, 79 S.Ct. 1283, 3 L.Ed.2d 1258 (1959).

■ The same consideration which precludes the application of double jeopardy generally, is equally applicable to the doctrine of collateral estoppel—the parties in the two litigations are different. Since there is no contention that the State of Arizona was in any manner in privity with the United States' prosecution of the defendants, that prior litigation could not collaterally estop the state from its day in court.

While collateral estoppel may not be applicable, Arizona provides some statutory protection against such multiple prosecutions via A.R.S. § 13–112:

§ 13–112. Former conviction or acquittal in another state

When on the trial of an accused person it appears that upon a criminal prosecution under the laws of the United States, or of another state or country, *founded upon the act or omission* in respect to which he is on trial he has been acquitted or convicted, it is a sufficient defense. (Emphasis added.)

The defendants argue that the act or commission which was the subject matter of the federal prosecution—the fraudulent scheme to obtain "advance fees"—is the same act or omission by which the state seeks to prove theft by false pretenses and is thus barred by A.R.S. § 13–112. The state counters by contending, that while both the federal prosecution and the state prosecution may rely upon similar facts, since the victim Clegg was not named in the federal indictment, the elements of the crime surrounding this victim are not identical to the elements surrounding the federal prosecution of other victims and thus the defense provided by A.R.S. § 13–112 is not available.

■ We first note that the defense of A.R.S. § 13–112 is predicated upon the same "act or omission," while the double jeopardy provisions of the United States and Arizona constitutions bar prosecution for the same "offense." We believe this distinction to be crucial, for it is no answer to the applicability of A.R.S. § 13–112 to point out that the "offenses" prosecuted by the federal government (conspiracy, interstate transportation, etc.) are different from the "offense" sought to be prosecuted by the state (theft by false pretenses). In our opinion, if the act or omission giving rise to both prosecutions is the same, A.R.S. § 13–112 provides a complete defense. It

thus becomes necessary to define the scope of "act or omission." We note that the term "act or omission" used in A.R.S. § 13–112 is the same term used in A.R.S. § 13–116 [4] dealing with double punishment. Logically, the term should consistently be given the same interpretation in both statutes. Case law has long established that A.R.S. § 13–116 is interpreted by applying the "identical elements" test. *State v. Gordon,* 125 Ariz. 425, 610 P.2d 59 (1980). This test requires eliminating the elements of one crime, and then determining whether the remaining evidence supports the elements of the other charge. *State v. Gordon, supra.* This is the test adopted by *Henderson v. State,* 30 Ariz. 113, 244 P. 1020 (1926) which interpreted the predecessor of A.R.S. § 13–112, a statute which contained almost the identical language of the current version.

We realize in adopting this interpretation that the Arizona Supreme Court in the recent case of *State v. Poland,* 132 Ariz. 269, 645 P.2d 784 (consolidated) (1982), has indicated that A.R.S. § 13–112 deals with differing crimes rather than differing acts and omissions.[5]

However, the court in *Poland* was not required to perform an in depth analysis of A.R.S. § 13–112 since whether an "offense" analysis or an "identical elements" analysis was engaged in that case, the result is the same—armed robbery obviously having different elements than murder,—and the evidence supporting the two was different.

 Applying the identical elements test to Berry, we find that A.R.S. § 13–112 provides no defense. In the federal prosecution, Berry pled guilty to conspiracy in violation of 18 U.S.C. § 371. The elements of conspiracy under the federal statute are that (1) two or more persons must conspire; (2) to commit any offense against the United States (or defraud the United States); and, (3) one or more of such persons do an act to affect the object of the conspiracy. *United States v. Falcone,* 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128 (1940). The crime is completed simply upon the formation of the criminal agreement and the performance of an overt act in furtherance thereof. *Poliafico v. United States,* 237 F.2d 97 (6th Cir. 1956), *cert. denied,* 352 U.S. 1025, 77 S.Ct. 590, 1 L.Ed.2d 597 (1957).

The state crime with which Berry was charged is theft by false pretenses under former A.R.S. § 13–661(A) which requires proof that the defendant (1) knowingly and designingly (2) by a false or fraudulent representation or pretense (3) obtained money or other value. Since evidence in the federal prosecution need not show completion of the crime, while such evidence must be shown to convict under the state charge, the elements are obviously different and the evidence supporting the two charges are different. Thus the "act or omission" necessary to convict the defendant of federal conspiracy is not the same "act or omission" to convict the defendant Berry of theft.

 With respect to defendant Kerekes, he was found guilty of conspiracy and nine other substantive charges. What we have stated concerning the conspiracy charge as to Berry is equally applicable to Kerekes. As to the substantive charges, none involved the victim Clegg. Assuming evidence is submitted showing that Kerekes defrauded Clegg, eliminating the Clegg evidence does not show that Kerekes also defrauded the victims involved in the federal prosecution. Conversely, additional evi-

---

**4. § 13–116. Double punishment**

An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other, to the extent the constitution of the United States or of this state require.

**5.** In *State v. Poland,* the court stated:

Defendants contend, however, that the Arizona prosecution is barred by former A.R.S. § 13–146 [now A.R.S. § 13–112] .... We disagree. This is not a situation of parallel prosecutions. The prosecutions were for distinct and separate crimes occurring at different times. The federal prosecutions were for kidnapping and armed robbery, while the state prosecution was for murder.

dence must be produced in the state prosecution for the defrauding of Clegg that was not produced in the federal prosecution of other victims.

In summary, we find that neither defendant is being prosecuted in Arizona for the identical "act or omission" for which he had been previously prosecuted in federal court. A.R.S. § 13–112 does not bar prosecution in the instant case.

For the foregoing reasons, the state's appeal as to Count II is dismissed; the trial court's order dismissing Count I is reversed; and the matter is remanded for further proceedings consistent herewith.

GRANT, J., and RICHARD M. DAVIS, Judge *Pro Tem.*, concur.

NOTE: The Honorable RICHARD M. DAVIS, a Judge *pro tempore* of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.