STATE of Alaska, Appellant,

v.

Raejean S. BONHAM, Appellee.

No. A–7614.

Court of Appeals of Alaska.

June 22, 2001.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Sue Ellen Tatter, Anchorage, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

---

**46.** AS 09.55.536(a) (emphasis added).

*OPINION*

STEWART, Judge.

Raejean S. Bonham pleaded guilty to federal charges of mail fraud and money laundering. Later, a state grand jury indicted Bonham on one count of perjury and six counts of submitting misleading securities filings.[1] Bonham moved to dismiss this indictment, claiming that AS 12.20.010 barred the State from prosecuting her for these crimes. Under AS 12.20.010, the State may not prosecute a defendant for a criminal act if the defendant previously was convicted or acquitted in another jurisdiction for the same act. Bonham asserted that her federal mail fraud conviction encompassed her acts of perjury and submitting misleading securities filings.

The superior court agreed with Bonham and dismissed the state indictment. The State now appeals the superior court's decision. We conclude that Bonham's perjury and misleading securities filings are not the same act as the mail fraud for which she was convicted in federal court—and, thus, AS 12.20.010 does not bar the State from pursuing its indictment. Accordingly, we reverse the decision of the superior court and reinstate Bonham's indictment.

*Underlying facts and proceedings*

In 1984, Bonham began buying airplane tickets from brokers who specialized in buying frequent flier coupons from airline customers. Bonham and her business, World Plus, Inc., would resell the tickets to her customers for less than the cost of a ticket purchased directly from an airline.

Beginning in 1989, Bonham started selling "contracts" to raise money for her business. She told her potential investors that she would use this money to buy frequent flier coupons in bulk from large corporations. Bonham told her investors that she was selling these "contracts" because she could not obtain the needed financing from banks, and thus she needed to raise money from private sources.

Bonham sold these "contracts" in $5,000 increments. The "contracts" were payable in six to eight months. They carried a return of twenty to fifty percent of the principal investment. When a "contract" matured, Bonham encouraged the investor to roll it over for another term. When Bonham's scheme was in full swing, several hundred individuals held these "contracts" at any one time.

Bonham did not, in fact, purchase frequent flier coupons from large corporations. Instead, she purchased the tickets from brokers using funds provided directly by flying customers. Bonham's profits from reselling these tickets were marginal; sometimes, her transactions actually resulted in losses.

Moreover, Bonham did not use the funds from her "contracts" to buy frequent flier tickets. Instead, she used this money to pay the maturing "contracts" of other investors. That is, Bonham engaged in a "Ponzi", or pyramid, scheme.

After a potential investor in Bonham's "contracts" contacted the State Division of Securities, Ed Watkins, a securities examiner, contacted Bonham. On September 4, 1992, Watkins advised Bonham that her "contracts" were securities for purposes of Alaska's securities statutes (AS 45.55), and that she either had to register each offering or apply for an exemption under AS 45.55.900. Bonham indicated that she had not realized that her contracts were covered by Alaska's securities law. She promised that she would not issue any new contracts or rollover any current contracts until the matter was resolved.

This promise was false. Despite her assurance to Watkins, Bonham continued to issue new contracts through World Plus and through another business entity she owned, the Atlantic Pacific Funding Corporation.

An attorney representing Bonham corresponded with Watkins between November 1992 and February 1993. This correspondence led to Bonham's March 1993 application to the Division of Securities to offer exempt securities. In a letter accompanying Bonham's application, her attorney stated that "all of [Bonham's] prior sales [had been] resolved and all investors paid in full." The

---

1. AS 11.56.200(a) and AS 45.55.925(a), respec-     tively.

attorney said that Bonham wanted to begin selling "new contracts" on March 15, 1993, and that these new contracts would total approximately $300,000. Bonham's application set an upper limit of twenty-five investors and $500,000 in contracts. Based on these representations, the Division of Securities issued Bonham the requested exemption.

By the end of March 1993, Bonham had violated the terms of her exemption. Her outstanding contracts totaled more than $2,000,000.

A little more than one year later, on May 24, 1994, Bonham's attorney wrote the Division of Securities to apply for a renewal of Bonham's exemption. The attorney's letter was accompanied by an affidavit from Bonham. In her affidavit, Bonham swore that all her previously issued contracts had been paid in full. This assertion was false. Since March 1993, Bonham had issued more than 2,000 contracts with a principal amount in excess of $45,700,000.

Based on Bonham's false representations, the Division of Securities granted Bonham another exemption, but this time the Division set upper limits of fifteen investors and no more than $250,000 in contracts. The Division also required Bonham to submit quarterly reports on her contract-selling activities.

In Bonham's first quarterly report (September 8, 1994), Bonham's attorney reported that Bonham had issued no new contracts. In fact, Bonham had issued more than 500 contracts during that three-month period, in a principal amount exceeding $11,700,000. Bonham's next quarterly report (December 12, 1994) stated that she had only one new investor. In fact, Bonham had issued more than 600 new contracts in a principal amount exceeding $14,250,000.

The Division of Securities granted Bonham a renewed exemption for 1995. Bonham's attorney submitted three quarterly reports in 1995, each one claiming that Bonham had engaged only in authorized activity. In truth, Bonham continued to issue hundreds of contracts, with principal sums in the tens of millions of dollars.

In October 1997, a federal grand jury returned a 79–count indictment against Bonham. The indictment included numerous counts of mail fraud,[2] money laundering,[3] and engaging in prohibited monetary transactions.[4] Bonham ultimately reached a plea agreement with the federal government that called for her to plead guilty to one count of mail fraud and one count of money laundering. On January 14, 1999, United States District Court Judge H. Russell Holland sentenced Bonham to concurrent sentences of 5 years in prison on each count.

One month later, on February 16, 1999, an Alaska grand jury indicted Bonham on one count of perjury and six counts of submitting misleading securities filings. The perjury count was based on Bonham's affidavit (dated May 24, 1994) that her attorney sent to the Division of Securities. The six counts of submitting misleading securities filings were based on Bonham's May 24, 1994, application to offer exempt securities, and the ensuing five quarterly reports that her attorney sent to the Division of Securities in 1994 and 1995.

Bonham moved to dismiss the State's indictment, arguing that AS 12.20.010 barred the State from prosecuting her for any of the acts connected with her mail fraud scheme. Superior Court Judge Michael L. Wolverton found that Bonham's false affidavit and her misleading securities filings were all connected to the mail fraud for which she had been convicted in federal court. Judge Wolverton therefore granted Bonham's motion to dismiss. The State now appeals.

*Why we conclude that AS 12.20.010 does not bar the State from pursuing its indictment*

▮ The statute that Bonham relies on, AS 12.20.010, declares that if a defendant has been convicted or acquitted in another jurisdiction for a criminal act, Alaska is barred from prosecuting the defendant for the same act:

2. 18 U.S.C. § 1341.

3. 18 U.S.C. § 1956(A)(1)(a)(i).

4. 18 U.S.C. § 1957.

> When an act charged as a crime is within the jurisdiction of the United States, another state, or a territory, as well as of this state, a conviction or acquittal in the former is a bar to the prosecution for it in this state.

Bonham claims that her federal conviction for mail fraud rests on, or incorporates, all the acts she committed in connection with her scheme to defraud—including the false affidavit and the misleading documents she filed with the Division of Securities in her effort to prevent the Division from discovering or interfering with her scheme. Thus, Bonham argues, AS 12.20.010 prohibits the State from prosecuting her for these crimes.

We discussed AS 12.20.010 in *Booth v. State*.[5] We noted that Alaska is one of a substantial minority of states that limit the power of their own government to prosecute a defendant for a criminal act after another sovereign already has done so.[6] We explained that AS 12.20.010 was "designed to complement the double jeopardy clause by protecting criminal defendants against successive prosecutions by different governments."[7]

To determine whether this statute bars the State from prosecuting Bonham, we must interpret the phrase, "an act charged as a crime." Our job is to discern what the legislature meant by these words.[8] Bonham's case demonstrates that this short and apparently simple phrase does not always point to clear answers. As a New York court remarked (when construing that state's corresponding statutes [9]), any effort to discern the legislature's intent necessarily involves a careful effort to reconcile the complex and competing considerations inherent in this area of law. On the one hand, there is the powerful traditional rationale underlying double jeopardy—the vital need to protect the accused from repeated prosecutions for the same alleged acts. On the other hand, there is a natural reluctance to surrender the right of this jurisdiction to enforce its laws to the claims of other jurisdictions functioning under different statutes, and with different problems and interests. Complicating the whole is the infinite variety of language relating to similar criminal acts which may be found in the statutory provisions of different jurisdictions and the infinite permutations of factual situations which can and do occur.[10]

Because numerous states have statutes corresponding to AS 12.20.010, there is considerable case law addressing the question of whether a state may prosecute a defendant for a crime after the defendant already has been convicted or acquitted in federal court on related charges.[11] One situation frequently discussed in these cases is the type of situation presented in Bonham's case: a defendant has been prosecuted for a federal offense involving a wide-ranging criminal scheme—for example, wire fraud, mail fraud, or a RICO violation—and then a state indicts the defendant for one or more crimes that logically could be viewed as components of the scheme for which the defendant was convicted or acquitted in federal court. Courts generally hold that the state prosecution is allowed.[12]

5.   903 P.2d 1079 (Alaska App.1995).

6.   *See id.* at 1085. *See* W. LaFave & J. Israel, *Criminal Procedure*, § 25.5(b)-(c), at 691–94 (2d. ed.1999). Many of these state statutes are catalogued in the American Law Institute's Model Penal Code and Commentaries, § 1.10, Cmt. at 174–75, nn. 15, 17, 18, & 21 (1985).

7.   *Booth*, 903 P.2d at 1085.

8.   *See Millman v. State*, 841 P.2d 190, 194 (Alaska App.1992) (noting that a court's duty when construing a statute "is to ascertain and implement the intent of the legislature").

9.   *See* N.Y. Penal Law § 33 and N.Y.Crim. Proc. § 139.

10.   *People v. Fello*, 231 N.Y.S.2d 657, 661 (Ct. Gen.Sess.1962).

11.   *See generally* Annotation, *Conviction or Acquittal in Federal Court as Bar to Prosecution in State Court for State Offense Based on Same Facts—Modern View*, 6 A.L.R.4th 802, 816–24, 1981 WL 167755 (1981), as supplemented by the August 2000 pocket part.

12.   *See State v. Berry*, 133 Ariz. 264, 650 P.2d 1246, 1248, 1251–52 (App.1982) (The defendant pleaded guilty to federal conspiracy charges in connection with a scheme to defraud. Held: the Arizona counterpart to AS 12.20.010 did not bar the state from prosecuting the defendant for theft by false pretenses arising from the same

These courts generally conclude that the word "act" was intended to mean something narrower than "transaction" or "episode," and for this reason they focus on a comparison of the particular elements that must be proved to establish the federal crime versus the elements that must be proved to establish the state crime. For instance, in the *Fello* case quoted above, the defendants were acquitted in federal court of charges that they engaged in restraint of interstate commerce and conspired to restrain interstate commerce.[13] New York then prosecuted the defendants for extortion and conspiracy to commit extortion. The court ruled that the state prosecution was not barred by the prior federal acquittal because "[that] acquittal could not conceivably be viewed as an adjudication on the merits of the matters set forth in the [state] indictment."[14]

We reach the same conclusion in Bonham's case. Bonham pleaded guilty to violating 18 U.S.C. § 1341, a federal statute that forbids using the mail (or interstate delivery services such as Federal Express) to further "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." Bonham's written plea agreement contained a detailed (fourteen-paragraph) recitation of the factual basis for Bonham's mail fraud conviction. This recitation of the government's case focuses exclusively on the false and deceptive representations that Bonham made to her investors. It does not mention the false affidavit and misleading filings that Bonham submitted to the Alaska

---

scheme.); *People v. Porter*, 156 Ill.2d 218, 189 Ill.Dec. 413, 620 N.E.2d 381, 384 (1993) (The defendant was indicted on federal RICO (racketeering) charges and the federal court dismissed the charges. Held: this dismissal did not bar Illinois from prosecuting the defendant for a related murder, even though this murder was one of the predicate felonies listed in the federal RICO indictment, because a federal conviction could have been based on the other listed predicate felonies.); *State v. Cooper*, 211 N.J.Super. 1, 510 A.2d 681, 689–90 (1986) (The defendant was convicted of federal RICO charges that listed robbery as one of the predicate felonies. Held: New Jersey could prosecute the defendant for robbery because the federal conviction was based on other listed predicate felonies.); *State v. Di Ventura*, 187 N.J.Super. 165, 453 A.2d 1354, 1356, 1357–58 (1982), *disapproved on other grounds in State v. Dively*, 92 N.J. 573, 458 A.2d 502 (1983) (The defendant was acquitted in federal court of a mail fraud charge based on the defendant's alleged scheme to defraud insurance companies by committing arson and then submitting fraudulent claims. Held: New Jersey could prosecute the defendant for the underlying crimes of arson and conspiracy to commit arson.); *People v. Mabry*, 101 A.D.2d 961, 479 N.Y.S.2d 85, 86–87 (1984) (The defendant was convicted of federal mail fraud. Held: this mail fraud conviction did not bar New York from prosecuting the defendant for forgery and possession of forged instruments based on the same underlying events.); *People v. Gilbert*, 44 Misc.2d 318, 253 N.Y.S.2d 656, 661–62 (Spec. and Trial Term 1964) (The defendant was convicted of federal wire fraud. Held: New York was not barred from prosecuting the defendant for the underlying grand larceny.); *State v. Rudy*, 105 Wash.2d 921, 719 P.2d 550, 551, 553–54 (1986) (The defendant pleaded guilty in federal court to a charge of conspiring to interfere with interstate commerce by means of robbery, extortion, or threat of violence. Held: the defendant's federal conviction did not bar Washington from prosecuting the defendant for burglary and kidnapping even though substantially the same evidence probably would be used in the state prosecution).

*See also People v. Lo Cicero*, 14 N.Y.2d 374, 251 N.Y.S.2d 953, 200 N.E.2d 622, 624–25 (1964) (The defendant was acquitted in federal court of robbery charges arising from the hijacking of a truck. Held: the state prosecution for kidnapping of the truck driver was not barred by New York's counterpart to AS 12.20.010.); *Epps v. Commonwealth*, 216 Va. 150, 216 S.E.2d 64, 68–69 (1975) (The defendant was acquitted of federal bank robbery charges. Held: Virginia could prosecute the defendant for attempted murder arising from the same transaction.); *Naughton v. State*, 453 A.2d 796, 797–98 (Del.1982) (The defendants were convicted in federal court for transmitting obscene photographs via the mail. Held: this federal conviction did not bar Delaware from prosecuting the defendants for sexual exploitation of minors based on production of the same photographs.).

*But cf. Commonwealth v. Mascaro*, 260 Pa.Super. 420, 394 A.2d 998, 1001–02 (1978) (holding that a defendant's prior federal conviction for mail fraud and false statements barred Pennsylvania from pursuing a prosecution for theft by deception, deceptive business practices and unsworn falsification); *State v. West*, 260 N.W.2d 215, 220–23 (S.D.1977) (holding that a defendant's prior federal conviction for wire fraud barred South Dakota from pursuing a prosecution for grand larceny, obtaining money by false pretenses, and issuing checks against insufficient funds).

**13.** *See* 231 N.Y.S.2d at 658–60.

**14.** *Id.* at 661.

Division of Securities. Moreover, the plea agreement identifies Bonham's predicate use of the mail as her act of inducing a woman in New Hampshire to send her a $50,000 check via Federal Express on May 9, 1995.

Given the elements of the federal offense of mail fraud, and given this recitation of the factual basis for Bonham's plea, Bonham's conviction of mail fraud in federal court clearly rested on different acts from those charged in the Alaska indictment. It is true that the acts alleged in the state indictment (perjury and the submission of misleading filings) were connected to Bonham's scheme to defraud the World Plus investors. If Bonham committed these criminal acts, she clearly did so in order to forestall the Division of Securities from investigating and potentially derailing her scheme to defraud her investors. But AS 12.20.010 does not forbid successive prosecutions for offenses arising from the same transaction or episode. Rather, it forbids successive prosecutions for offenses based on the same criminal act.[15]

Bonham's federal plea to mail fraud—her acknowledgement of the fraudulent acts recited in the federal plea agreement—does not encompass the allegations of perjury and misleading securities filings contained in the state indictment. Thus, Bonham's federal mail fraud conviction realistically cannot be viewed as an adjudication of those alleged state offenses. If Bonham submitted a false affidavit and misleading filings to the Division of Securities, and even if she did these things to advance her scheme to defraud the World Plus investors, Bonham's federal mail fraud conviction does not bar her prosecution for these crimes any more than it would bar a hypothetical prosecution for murder if, for example, the State alleged that Bonham had committed homicide in order to silence someone who was about to reveal her scheme.

*Why we conclude that the Alaska double jeopardy clause does not bar the State from pursuing its indictment*

■ Bonham alternatively argues that the State should be prevented from pursuing its indictment because Federal District Judge Holland considered, or at least knew of, Bonham's perjury and misleading securities filings when he sentenced Bonham for mail fraud. Bonham points out that her federal pre-sentence report discusses the deceptive filings she submitted to the Alaska Division of Securities. She argues that, because Judge Holland knew of these acts when he sentenced Bonham, the Alaska Constitution's double jeopardy clause should bar the State from pursuing its indictment.

In *Witte v. United States*,[16] the United States Supreme Court held that the federal double jeopardy clause is not violated when a defendant is convicted and sentenced for a crime even though another judge already has considered the facts of that crime when calculating the defendant's sentence for a separate crime under the federal sentencing guidelines.[17] Thus, Bonham has no claim under the federal double jeopardy clause. Bonham argues that the Alaska double jeopardy clause should be interpreted to provide greater protection. But Bonham has not identified anything in the text, the context, or the history of our double jeopardy clause (article 1, section 9) to support such an expansion of double jeopardy protection.

In *Yearty v. State*,[18] we held that separate convictions and sentences for offenses arising out of a single transaction do not violate the double jeopardy clause "when the offenses involve differences in intent or conduct, or when the statutory provisions that have been violated protect societal interests that are significantly different."[19] Bonham's offense of mail fraud involves significantly different societal interests from her alleged offenses of

---

**15.** *See Seaman v. State*, 825 P.2d 907, 908–09 (Alaska App.1992) (holding that AS 12.20.010 does not bar successive prosecutions for different criminal acts even though those acts arise from a "continuous criminal episode").

**16.** 515 U.S. 389, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

**17.** *See*, 515 U.S. at 403–04, 406, 115 S.Ct. at 2208, 2209. *See also Williams v. Oklahoma*, 358 U.S. 576, 586, 79 S.Ct. 421, 427, 3 L.Ed.2d 516 (1959).

**18.** 805 P.2d 987 (Alaska App.1991).

**19.** *Id.* at 993.

perjury and submitting misleading securities filings, and the federal government could not have prosecuted Bonham for those latter crimes. We therefore conclude that even if Judge Holland did consider Bonham's alleged perjury and misleading securities filings when he sentenced Bonham for federal mail fraud, the Alaska double jeopardy clause would not bar the State from prosecuting Bonham for these acts.

*Conclusion*

For these reasons, we hold that the state indictment against Bonham is not barred by AS 12.20.010, nor is it barred by the Alaska double jeopardy clause. The superior court's order dismissing this indictment is REVERSED, and this case is REMANDED to the superior court for further proceedings on the indictment.