IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAR -4 2011

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Appellee, | ) | 2 CA-CR 2009-0395 |
| | ) | DEPARTMENT B |
| v. | ) | |
| | ) | O P I N I O N |
| DELLA LISA VERMUELE, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20083043

Honorable Paul E. Tang, Judge

AFFIRMED

Thomas C. Horne, Arizona Attorney General
  By Kent E. Cattani and Alan L. Amann                                Tucson
                                                          Attorneys for Appellee

Robert J. Hirsh, Pima County Public Defender
  By Michael J. Miller                                               Tucson
                                                          Attorneys for Appellant

E C K E R S T R O M, Judge.

**¶1**        A jury convicted appellant Della Vermuele of the first-degree murder of her son. The trial court sentenced her to life imprisonment without the possibility of parole. On appeal, she argues her natural life sentence is excessive and that the trial court erred when it failed to consider evidence in mitigation.[1] For the following reasons, we affirm her sentence.

**¶2**        For a few months in the summer of 2008, Vermuele and her adult son, Spencer C., lived with Ora and Martha C. at their residence in Tucson. At the end of July, after Vermuele had returned to the home angry and upset following a visit to the hospital, she and Spencer had a loud, heated argument in a bedroom they shared at the residence. After about twenty minutes, Ora tried to calm them down and asked Spencer to go on a walk. While Spencer was putting on his shoes in the bedroom, Vermuele went into the kitchen, let out a "primal scream," grabbed a knife, went back to the bedroom and slammed the door shut. Ora tried to stop her as she passed him. Moments later, Spencer came out of the bedroom holding his abdomen and bleeding. He stated, "[C]all 911. My mom stabbed me." He then collapsed in a chair in the living room. Vermuele entered the living room and told Spencer, "You fucking drove me to it."

**¶3**        By the time Spencer was taken to the hospital, he had died from a stab wound that had penetrated his right lung and his heart. Spencer also had stab wounds on

---

[1]Vermuele has raised several other issues that do not meet the criteria for publication, which we have addressed in a separate, contemporaneously filed memorandum decision. *See* Ariz. R. Sup. Ct. 111(b), (h). The facts set forth in this opinion are not directly relevant to the issue discussed here and have been provided mainly as context for our discussion.

his left arm, lower back, and the left side of his chin. Vermuele sustained a stab wound to her lower right abdomen and also was taken to the hospital, where she had surgery to repair her wound.

¶4 At trial, Vermuele testified she and Spencer had been arguing throughout the month of July about money and his methamphetamine use. Vermuele testified that, on the day of the killing, Spencer had threatened her so she had armed herself with a paring knife from the kitchen, but accidentally dropped it on her way to the bedroom. She claimed that she and Spencer had rushed to retrieve, and eventually struggled for possession of, a butcher knife on the entertainment center in the bedroom. Vermuele contended that she and Spencer had incurred their wounds during the struggle and that she did not know who had stabbed whom. Vermuele was convicted after a jury trial of first-degree murder and was sentenced to natural life in prison. This appeal followed.

¶5 Vermuele argues "natural life was an excessive sentence." She also contends the trial court erred when it failed to give weight to several categories of her mitigation evidence. Preliminarily, the state argues that Vermuele has forfeited these claims because she failed to raise them to the trial court and she has not contended on appeal that the alleged errors are fundamental. *See State v. Moreno-Medrano*, 218 Ariz. 349, ¶¶ 16-17, 185 P.3d 135, 140 (App. 2008) (declining to review for fundamental error when appellant failed to raise claim in trial court and failed on appeal to address whether alleged error was fundamental).

3

**¶6** Assuming *arguendo* that the state is correct that Vermuele did not raise at least one of her sentencing claims to the trial court,[2] the basis for those claims did not become apparent until the court's pronouncement of the sentence.[3] Because a trial court's pronouncement of sentence is procedurally unique in its finality under our rules of criminal procedure, and because a defendant has no appropriate opportunity to preserve any objection to errors arising during the court's imposition of sentence, we cannot agree that Vermuele has forfeited or "waived" such claims here.[4]

**¶7** "The judgment of conviction and the sentence thereon are complete and valid as of the time of their oral pronouncement in open court." Ariz. R. Crim. P. 26.16(a); *see also Willmon v. State ex rel. Eyman*, 16 Ariz. App. 323, 324, 493 P.2d 125, 126 (1972) (open court rendition of judgment is official act effective when announced notwithstanding defect in minute entry). Under our rules of procedure, a defendant is formally advised of his or her right to appeal immediately thereafter. Ariz. R. Crim. P.

---

[2]Vermuele contends correctly that, at minimum, her counsel's argument to the trial court that she should receive a parole-eligible sentence preserved her appellate claim that the natural life sentence the court imposed was excessive.

[3]Under Rule 26.10(b), Ariz. R. Crim. P., the entire "[p]ronouncement of [s]entence" process technically involves six steps beginning with the defendant being provided "an opportunity to speak on his or her own behalf." Herein, however, we refer to the pronouncement of sentence as the portion of that process occurring after the defendant's allocution, during which the trial court advises the defendant precisely what aggravating and mitigating factors it has found; pronounces the sentence as a result of those findings; sets forth the commencement date of the sentence; and determines what, if any, time served will be credited against the sentence. *See* Ariz. R. Crim. P. 26.10(b)(3), (4).

[4]As our supreme court observed in *State v. Martinez*, 210 Ariz. 578, n.2, 115 P.3d 618, 620 n.2 (2005), the failure to object does not technically "waive" an assignment of error but rather limits the scope of appellate review.

4

26.11(a). Once sentence is pronounced, the trial court has no jurisdiction to modify it unless the court concludes, within sixty days of its entry, that the sentence was either unlawful or unlawfully imposed and the defendant's appeal has not yet been perfected. *State v. Thomas*, 142 Ariz. 201, 204, 688 P.2d 1093, 1096 (App. 1984); *see* Ariz. R. Crim. P. 24.3.

¶8　　　　Nor do our rules provide criminal defendants any express procedural opportunity, before the judgment and sentence become final and ripe for appeal, to challenge those alleged errors that do not become apparent until the trial court pronounces the sentence. Although an intrepid attorney could hypothetically voice an immediate objection *during* the trial court's pronouncement of sentence, our rules of criminal procedure make no provision for such an objection. And, we decline to impose a requirement that counsel interrupt what should be a solemn event, occurring after all parties have had an opportunity to address the court, simply to preserve the appellate record. *See In re Parham*, 6 Ariz. App. 191, 195, 431 P.2d 86, 90 (1967) (imposition of sentence a "solemn moment"). Counsel could also conceivably seize the opportunity to challenge the sentence immediately after its rendition but before the hearing has concluded. But, while our rules specify the sequence of events following pronouncement of sentence in considerable detail, they provide no opportunity for counsel to challenge the sentence at this stage, nor do they require the trial court to entertain such a challenge. *See* Ariz. R. Crim. P. 26.11.

¶9　　　　Thus, Vermuele had no clear procedural opportunity to challenge the rendition of sentence before it became final. Because a defendant cannot forfeit an

5

opportunity that the defendant does not have, her failure to challenge the sentence at the sentencing hearing cannot be fairly characterized as a forfeiture or waiver. *See Marsin v. Udall*, 78 Ariz. 309, 312, 279 P.2d 721, 723 (1955) ("[B]efore one can be said to have waived [a] right, he must have had an opportunity to exercise it.").

¶10    As our supreme court has emphasized, one of the purposes of imposing a more restrictive standard of appellate review when a defendant fails to raise an argument in the trial court is to prevent a litigant from securing a strategic advantage by saving the alleged error as a "'hole card'" for appeal in the event of an adverse trial court result. *State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005), *quoting State v. Valdez*, 160 Ariz. 9, 13, 770 P.2d 313, 317 (1989). An untimely objection also deprives the trial court of the opportunity to correct any errors before they become procedurally burdensome to undo. *See, e.g.*, *State v. Davis*, 226 Ariz. 97, ¶ 15, 244 P.3d 101, 105 (App. 2010) (finding waiver in part because failure to object deprived trial court opportunity correct error before jury reached verdict).

¶11    Here a defendant secures no obvious strategic advantage by awaiting the next procedural step—appeal—to challenge errors arising during the pronouncement of sentence. The potential remedy, whether secured by successful appeal or by an extraordinary post-judgment objection, would simply be an eventual resentencing. *See generally* Ariz. R. Crim. P. 26.14 (specifying procedures when sentence set aside). Under such circumstances, the above rationales for our imposition of a less favorable standard of review do not apply.

6

¶12     We acknowledge that Rule 24.3 provides an avenue by which a defendant may ask the trial court to correct certain sentencing errors even after the sentence has become final.  But a trial court lacks jurisdiction under that rule to provide any relief unless the final sentence was "unlawful" or "imposed in an unlawful manner." *State v. Falkner*, 112 Ariz. 372, 373, 542 P.2d 404, 405 (1975).  And, we have previously held that analogous post-verdict challenges are insufficient to preserve issues for appellate review.  *See, e.g.*, *Davis*, 226 Ariz. 97, ¶ 12, 244 P.3d at 104 (motion for new trial pursuant to Rule 24.1(c)(5), Ariz. R. Crim. P., does not preserve objection to trial error); *State v. Mills*, 196 Ariz. 269, ¶ 15, 995 P.2d 705, 709 (App. 1999) (same).  Furthermore, our supreme court included no language in Rule 24.3 suggesting that sentencing claims not raised by that avenue would be forfeited on appeal.  *See State v. Gause*, 112 Ariz. 296, 297, 541 P.2d 396, 397 (1975) (observing that former Rule 32.9(a) specifically required motion for rehearing before trial court to preserve appellate claims).

¶13     As noted above, criminal defendants are immediately advised of their right to appeal after sentence has been imposed pursuant to Rule 26.11(a), a right they must promptly assert or forever forfeit.  *See State v. Berry*, 133 Ariz. 264, 266, 650 P.2d 1246, 1248 (App. 1982) (timely filing of notice of appeal essential to court's exercise of appellate jurisdiction).  Thus, our rules contemplate that an appeal, not an extraordinary post-judgment motion, is the presumptive procedural remedy available to the defendant following the imposition of judgment and sentence.  We cannot fault a defendant who

7

chooses to pursue the remedy of appeal and urge all of his or her claims in a single post-judgment procedure.[5]

¶14            For the foregoing reasons, we reject the state's contention that the defendant forfeited appellate review of alleged errors that did not become apparent until the trial court pronounced sentence. In doing so, we clarify that nothing about this limited ruling relieves litigants of the duty to challenge all other errors related to sentencing before the trial court. Indeed, our rules themselves provide an ordered process for challenging any errors in the presentence report. Ariz. R. Crim. P. 26.8. Those rules also provide a defendant the opportunity to speak immediately before pronouncement of sentence and thereby raise any other legal challenge to the propriety of the sentencing process that becomes apparent up to the moment the trial court pronounces sentence. Ariz. R. Crim. P. 26.10(b)(1).

¶15            We first address Vermuele's claim the sentence was excessive. In general, "[a] trial court has broad discretion to determine the appropriate penalty to impose upon conviction," and we will not disturb a sentence that is within the appropriate statutory range unless the court has abused its discretion. *State v. Cazares*, 205 Ariz. 425, ¶ 6, 72 P.3d 355, 357 (App. 2003). If the trial court fully considers the factors relevant to imposing sentence, we will generally find no abuse of discretion. *Id.* Although the trial court must give due consideration to all mitigating evidence, the weight to be given any

---

[5]We do not address whether a defendant who instead chooses to challenge a trial court's pronouncement of sentence through Rule 24.3 must then raise all potential challenges at that juncture to avoid forfeiting appellate review of any unraised claims.

factor asserted in mitigation falls within the trial court's sound discretion. *Id.* ¶ 8. However, a court may abuse its discretion if it declines to consider potentially mitigating evidence on the erroneous assumption that it is statutorily barred from doing so. *See State v. Thurlow*, 148 Ariz. 16, 20, 712 P.2d 929, 933 (1986).

¶16 Here, other than arguments she presented to the trial court, Vermuele provides us no basis to conclude her sentence was excessive. The court indicated that it had presided over the trial and reviewed all the materials presented in both aggravation and mitigation. It then heard argument from counsel for both parties and provided an opportunity for Vermuele to speak. Thereafter, it articulated those features of the homicide and Vermuele's background that it found most pertinent in determining the sentence: Vermuele's prior criminal record and the effect of Spencer's death on his family. Although Vermuele emphasizes non-trivial mitigating features of her difficult childhood and the apparent fact that she killed her son in the heat of an argument rather than as the product of calm deliberation, we must be mindful that the trial court is far better equipped to assess the defendant, who appears in person before it, than this court. *See State v. Ferreira*, 128 Ariz. 530, 532, 627 P.2d 681, 683 (1981). On the record before us, we cannot say that the trial court abused its considerable discretion in imposing the term of natural life.

¶17 Vermuele also contends that the trial court erred as a matter of law when it rejected certain mitigation evidence she offered. Specifically, the court stated:

> In mitigation, your counsel has suggested, among other factors, the following: your age, medical history, a difficult childhood, substance abuse, mental disorder, and remorse as

9

factors. . . . [T]he Court is not persuaded that any of these factors fit under our state's statutory definitions for mitigating factors except, perhaps, the remorse, which I do accept. And that is, of course, because, as to the remaining factors, none of these fit into an express factor in mitigation . . . .

Although these remarks could reasonably be interpreted to reflect an erroneous conclusion by the court that it could not consider much of Vermuele's mitigation evidence because that evidence did not fall within certain statutory categories, we must assume the trial court knows the law and was aware that it could consider any mitigating factors which it might deem appropriate in the interests of justice. *See* 2005 Ariz. Sess. Laws, ch. 325, § 3 (requiring court to consider enumerated mitigating circumstances when deciding whether to impose life or natural life sentence for murder under former A.R.S. § 13-703.01(Q)(2)); *see also* 2006 Ariz. Sess. Laws, ch. 148, § 1 (expressly authorizing court to consider "[a]ny other factor that is relevant to the defendant's character or background or to the nature or circumstances of the crime and that the court finds to be mitigating" under former § 13-702(D)(5)); *State v. Williams*, 220 Ariz. 331, ¶ 9, 206 P.3d 780, 783 (App. 2008) (presuming court knows and follows law). We therefore assume that those comments conveyed, albeit inartfully, that the court did not find Vermuele's particular mitigation arguments of *sufficient weight* to constitute mitigating circumstances as set forth in the former § 13-702(D), rather than a belief that it could not categorically consider those types of mitigation at all.

¶18 Indeed, the trial court expressly found Vermuele's remorse as a mitigating factor, although the defendant's remorse is not enumerated in the former § 13-702(D) as a mitigating circumstance. And, the court discussed the evidence of Vermuele's mental

10

disorder at some length, suggesting that it was assessing the weight of that evidence rather than precluding consideration of it categorically. These discussions place the above comments in context and reinforce our conclusion that the court properly understood the breadth of its discretion in considering mitigating circumstances. Therefore, the court did not abuse its discretion when it considered, but did not find as mitigating factors, Vermuele's "age, medical history, . . . difficult childhood, substance abuse, [and] mental disorder."

**Disposition**

¶19 For the foregoing reasons, and for the reasons set forth in our separate memorandum decision, Vermuele's conviction and sentence are affirmed.

/s/ *Peter J. Eckerstrom*
PETER J. ECKERSTROM, Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge